Mark DAVIS, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 51855.

Court of Criminal Appeals of Texas.

Dec. 15, 1976.

James F. Newth, Dallas, on appeal only, for appellant.

Henry Wade, Dist. Atty., Steve Wilensky, Donald J. Driscoll and D. Brian Blessing, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

PHILLIPS, Judge.

The offense is assault with intent to murder without malice; the punishment, three years.

In a per curiam opinion decided March 17, 1976, the appeal in this cause was dismissed because sentence was untimely pronounced. Appellant has been resentenced and the appeal is reinstated.

Although the sufficiency of the evidence is not challenged, a recitation of the facts is necessary in order to understand appellant's contentions. Witness Brown testified that he and Bobbie Jean Wright were riding in Wright's car on December 9, 1972. Brown offered to buy some gasoline and they proceeded to a service station. Appellant put gas in Wright's car and Brown presented a credit card as payment. After Brown started to put the ticket in his billfold, he noticed a discrepancy in the amount of purchase. The ticket was imprinted by a machine at the top with 00750; however, the figures 172 55 were entered by hand on the bottom of the ticket next to the word Total. Brown stated he returned to the sales office to explain to appellant that a mistake had been made. Appellant said he had not made a mistake and told Brown to get out of there and pulled a pistol. Brown went across the street and called the police. He returned to the station and offered to pay cash. He said appellant refused the offer and told Brown not to tell him how to run his business. Brown called the police again. Upon returning to the service station, Brown asked another customer to look at the ticket. After the customer moved, appellant approached Brown and said he had told him to get away from the station. Brown said appellant then pulled a pistol and shot him in the neck. Brown stated he did not look at the pump and did not know the number of gallons of gas that he had

purchased or the amount of purchase. Brown said he did not swear or curse at appellant and did not approach him in a violent manner.

Wright testified she waited in the car after Brown purchased the gasoline. It appeared Brown and appellant were arguing, but she did not hear what was said. When she entered the sales office, she said Brown and appellant were discussing the $172.50. She stated the purchase was for $5.00 or $5.51 and that her car would not hold $7.50 worth of gas. She said Brown went to the Dairy Queen to call the police. She offered to pay appellant for the gas and he refused. Wright stated she tried to call Brown's wife after Brown was shot, but appellant did not let her use the phone and appellant told her to get back or he would shoot her.

Witness Adger testified he was buying gasoline at the station at the time of the alleged offense. Brown asked Adger about the discrepancy on the ticket and Adger agreed that Brown would be charged with the figure at the bottom. He stated he did not hear Brown use abusive language or curse. Adger heard appellant say he didn't want to hear any more and saw appellant shoot Brown. Adger did not see any weapons other than the pistol used by appellant. He stated appellant waved the pistol in Wright's direction.

Appellant testified in his own behalf. He stated he had a third grade education and he could not read, but he could write his name and had been practicing figures and "I could make them out as best I could." He said he was working at his brother's service station the day of the offense and Brown purchased some gas from him. He stated the amount imprinted at the top of the ticket was the amount of purchase and he explained to Brown that was the amount he would have to pay. He said Brown was abusive and kept calling him "Nigger". Appellant called his brother, but he was not at home. Appellant said Brown threatened to kill him if appellant did not return the "money". Appellant said he gave the ticket

back to Brown because he did not want any trouble. Brown left and appellant said the girl [Wright] was cussing and telling appellant what Brown was going to do. About 45 minutes to an hour later Brown returned. Appellant testified he asked Brown why he came back and Brown said, "I come back to kill you." Appellant stated he whirled around and shot Brown because he was afraid he would carry out the threat. Appellant said there were four more bullets in the gun and he could have shot Brown four more times. Appellant testified he gave Wright a dime to call an ambulance.

Appellant testified he had the gun because of a highjacking that occurred at the service station three weeks before the instant offense. Appellant's brother, W. T. Davis, corroborated appellant's testimony concerning the earlier highjacking and the amount of purchase as shown by the figure printed at the top of the ticket. Witness Davis stated the figure at the bottom indicated the amount of gas sold.

In his first ground of error appellant alleges he was improperly impeached at the guilt stage of the trial when the following occurred on cross examination:

"Q Now, Mr. Davis, on direct examination to the question your attorney was asking you, you told the man that you didn't want any trouble, that you had been in trouble before. What did you mean by that?

A Sir, the first time I got in trouble, the warden in Arizona—

Q The who?

A The warden, he was the man over the state penitentiary, because he told me, he said, 'You're the onliest man that don't have a scratch on your record. You need to be on the way to your family,' and he got me the first job, and he's the one that's recommended me for the first job, and I know what it was, I don't want to go back to the penitentiary.

[DEFENSE COUNSEL]: Just answer the questions and don't say anything that is not responsive to the question.

THE WITNESS: Well, I thought—

Q [PROSECUTOR]: I asked you what kind of trouble had you been into, what did not mean by trouble before?

A I had been to the penitentiary for murder.

[DEFENSE COUNSEL]: Your Honor, I would like to preserve my exception on the motion. Will you let the record show that we object to this line of questioning?

THE COURT: The record shows that you objected to the question and answer.

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: Overruled.

[DEFENSE COUNSEL]: Note our exception.

Q [PROSECUTOR]: You are telling about a sentence you received for not less than 13 nor more than 15 years in the Arizona State Penitentiary for second degree murder?

A Yes, sir.

Q And that's the only trouble that you were referring to?

A What do you mean?

Q That's the only trouble you have ever been in in the law?

A No, sir, you just told me awhile ago that I had been in trouble about my gun and things.

Q What do you mean by that.

A Well, I mean, I really don't understand you when you say is that the onliest trouble you been into. That's the first time I ever been to the penitentiary.

Q No further questions."

Prior to this testimony a hearing was held outside the presence of the jury and it was shown appellant was convicted of second degree murder in Arizona in 1957. Appellant testified he was released in 1962. Appellant stated he was twice convicted in 1967 and 1971 in Dallas County for the misdemeanor offense of carrying a pistol, and in 1967 of misdemeanor driving while intoxicated. Certified copies of the judgment, sentence, affidavit, information and waiver of jury trial and plea of guilty for the three misdemeanor convictions were introduced at the hearing for the purposes of the record only.

In light of the adverse ruling at the close of the hearing outside the jury's presence which preceded the testimony now complained of, appellant was not required to object further when the prior conviction was introduced before the jury. *Harryman v. State*, Tex.Cr.App., 522 S.W.2d 512.

Appellant contends the prior murder conviction was too remote to be used for impeachment since appellant was released from the Arizona Prison 12 years previous to the instant trial. We agree.

The question of remoteness of prior convictions is addressed largely to the discretion of the trial judge. *Bustillos v. State*, Tex.Cr.App., 464 S.W.2d 118. The tendency has been to uphold admission of a prior conviction if the period of time between release from prison and trial is less than 10 years. *Penix v. State*, Tex.Cr.App., 488 S.W.2d 86. However, the interval of time is not in itself the controlling factor and the facts of each case must determine if a prior conviction is too remote. *Dillard v. State*, 153 Tex.Cr. 134, 218 S.W.2d 476.

Among the factors to be considered are youthfulness of the accused at the time of the prior conviction, subsequent conduct as reflecting lack of reformation, the nature of the accusation and the facts and circumstances of the alleged offense, and the length and severity of the penalty assessed. *Bustillos,* supra; *Dillard,* supra.

Appellant was 55 at the time of the trial in October, 1974, and he was about 38 years of age at the time of the prior offense in Arizona. Appellant had not been convicted of any felonies or misdemeanors involving moral turpitude since his release from prison in 1962. The fact that appellant shot Brown was not in dispute; the issue at trial was who provoked the difficulty. Although the jury did not believe appellant's version of the incident, they found him guilty of assault with intent to murder without malice and not with malice as charged in the indictment. The jury was also charged on the lesser included offense of aggravated assault and the failure to find appellant guilty of this offense indi-

cates the jury found the assault was committed with the intent to kill. The court assessed the maximum punishment. In light of these circumstances, we cannot say the prior murder conviction did not affect the jury's verdict.

The State argues the prior murder conviction is not too remote because 10 years elapsed between appellant's release from prison and the alleged offense. We cannot agree. The date of trial is the controlling time for computation because the purpose of admitting prior convictions at the guilt stage of the trial is to allow possible impeachment. In the dissenting opinion on original submission in *McClendon v. State*, Tex.Cr.App., 509 S.W.2d 851, 854, it was said:

"The rule of remoteness is based upon reason. An accused should not be impeached by convictions which occurred so far in the past that they do not shed any light on his credibility at the time of trial."

The State also argues appellant's prior murder conviction is admissible because it involved a crime of the same nature as the instant offense and the three subsequent misdemeanor offenses evidence a lack of reformation. Driving while intoxicated and carrying a pistol are misdemeanor offenses not involving moral turpitude. *Gibbs v. State*, Tex.Cr.App., 385 S.W.2d 258; *Dowdy v. State*, Tex.Cr.App., 385 S.W.2d 678. As this Court stated in *McClendon*, supra, at page 855:

"A conviction of a misdemeanor which does not involve moral turpitude has not been considered as evidence of a lack of reformation. See *Livingston v. State*, [Tex.Cr.App.] 421 S.W.2d 108; *Blessett v. State*, 168 Tex.Cr.R. 517, 329 S.W.2d 434."

In *McClendon,* a murder conviction was reversed for improper admission of a prior murder conviction where 12 years and 11 months had elapsed from the defendant's release from prison and the trial. The fact that appellant was tried for a crime of the same nature cannot revitalize the remote prior conviction.

The State contends appellant's testimony on direct examination rendered the prior conviction admissible. Appellant was recounting his version of the alleged offense as follows:

"A But after I tried to explain it to him [complainant] I couldn't explain it to him, the white lady over across the street, at the Dairy Queen, they heard him over there cussing and screaming, and he had a big black hand knife, and they come from the Dairy Queen, they come over there to see what was the trouble. Okay, the lady that owned the wig shop over there, that's where I was trying to find out this morning, but I didn't have a chance to get her, she come over there, the man was raising so much sand over there, cussing and going on, so I told the gentleman, 'I tell you what I am going to do, Mister.' *I mean, I been in trouble, Your Honor.*" (Emphasis added.)

The State contends the question which elicited testimony of the prior conviction was merely a clarification of this previous testimony. Appellant's volunteered comment, which was not responsive, was ambiguous. It is not clear from this testimony that appellant was referring to this prior conviction, and the matter was not pursued. Cf. *Rascon v. State*, Tex.Cr.App., 496 S.W.2d 99. We do not agree that appellant's reference to being in trouble opened the door to admission of the prior murder conviction.

We find as we did in *McClendon* that the admission of the prior murder conviction where approximately 12 years had elapsed since appellant's release from prison was reversible error.

In the event of a retrial, we note that the court charged the jury on the law of assault with intent to murder with malice and without malice and on the law of aggravated assault. The law of aggravated assault and assault with intent to murder with malice was then applied to the facts. Although an abstract charge defining murder without malice was given, the law of assault with intent to murder without malice was not applied to the facts. Since this question may not arise in a subsequent trial, we express no opinion as to whether this is fundamental error which would require reversal. Cf. *Perez v. State*, Tex.Cr.App., 537 S.W.2d 455; *Harris v. State*, Tex.Cr. App., 522 S.W.2d 199.

The judgment is reversed and the cause remanded.