**Roy Valdez HERNANDEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–96–00893–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

May 21, 1998.

Rehearing Overruled July 13, 1998.

Discretionary Review Refused Nov. 18, 1998.

Randy McDonald, Houston, for Appellant.

John B. Holmes, Rikke Graber, Houston, for Appellee.

Before COHEN, WILSON and HEDGES, JJ.

## OPINION

HEDGES, Justice.

A jury found appellant guilty of possession of cocaine weighing more than one gram and

less than four grams. The trial judge sentenced him to 35 years in prison. In a single point of error, appellant asserts that the trial judge erred in allowing the State to impeach him with evidence of a 1977 felony conviction. We reverse and remand.

■ Generally, when a defendant testifies, prior convictions for felonies or misdemeanors involving moral turpitude may be admitted in evidence as impeachment. Tex.R. Evid. 609(a).[1] The trial judge should conduct a balancing test to determine if the probative value of the prior conviction is outweighed by its prejudicial effect. *Id.* In a standard 609(a) balancing analysis, the following factors should be considered: (1) the prior conviction's impeachment value; (2) its temporal proximity to the crime on trial, and the defendant's subsequent criminal history; (3) the similarity between the prior offense and the present offense; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue. *Theus v. State,* 845 S.W.2d 874, 881 (Tex.Crim.App. 1992). The trial court has wide discretion in deciding the question of admissibility, and its decision will not be reversed unless an appellant shows a clear abuse of that discretion. *Id.*

The Rules of Evidence provide a separate analysis standard if the conviction is more than 10 years old. Tex.R. Evid. 609(b).[2] Such a conviction is not admissible "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." The drafters of these rules provided heightened protection against prejudice when a conviction is statutorily deemed remote (more than 10 years old). The State must demonstrate that the probative value *"substantially outweighs,"* not merely "outweighs," the prejudicial effect. In instances in which remoteness is an issue, we look exclusively to the strictures of rule 609(b), not to the multiple factors of *Theus.* That case, which did not involve a

remote conviction, interprets rule 609(a), not 609(b).

The State impeached appellant with evidence of his 1977 felony conviction of delivery of marihuana. Because the conviction is more than 10 years old, it is inadmissible unless the State demonstrates that in the context of its prosecution, the probative value of the evidence substantially outweighed its prejudicial effect. In making this determination, we take into account that after his 1977 conviction, appellant was convicted of five misdemeanors: criminal trespass in 1979, carrying a weapon in 1983, possession of a controlled substance in 1985, possession of marihuana in 1990, and driving while intoxicated in 1995.

In evaluating whether to admit a remote conviction, Texas courts have historically looked at subsequent convictions of a felony or a misdemeanor involving moral turpitude. Such convictions indicate a lack of reformation, which is thought to attenuate prejudice interposed by a distant conviction. *McClendon v. State,* 509 S.W.2d 851, 855–57 (Tex. Crim.App.1974); *Sinegal v. State,* 789 S.W.2d 383, 388 (Tex.App.-Houston [1st Dist.] 1990, pet. ref'd). If a defendant demonstrates a failure to reform as witnessed by later criminal behavior, remote convictions are more palatable.

■ In evaluating a complaint about the admission of a prior conviction, an appellate court has several options. It may find that the prior conviction is not remote (less than 10 years old) and analyze its evidentiary impact under 609(a) and *Theus.* It may find that it is more than 10 years old but that subsequent convictions of felonies or misdemeanors involving moral turpitude remove the taint of its distance. Under that circumstance, the 609(a) standard is appropriate because the "tacking" of the intervening convictions causes a conviction older than 10 years to be treated as not remote. *Crisp v. State,* 470 S.W.2d 58, 59–60 (Tex.Crim.App. 1971); *accord McClendon v. State,* 509 S.W.2d 851, 855–56 (Tex.Crim.App.1974)(op.

---

1. This rule, effective March 1, 1998, is substantially identical to former Tex.R.Crim. Evid. 609(a).

2. This rule, effective March 1, 1998, is identical to former Tex.R.Crim. Evid. 609(b).

on reh'g). The court may find that the prior conviction is remote but that under rule 609(b) its probative value substantially outweighs its prejudicial effect, in which case the evidence is admissible. Finally, if a court finds that its probative value does not substantially outweigh its prejudicial effect, and its admission is error, a harm analysis must be conducted.

Appellant's subsequent convictions are neither felonies nor misdemeanors involving moral turpitude. A conviction of a misdemeanor not involving moral turpitude is not considered a lack of reformation. *Davis v. State*, 545 S.W.2d 147, 150 (Tex. Crim.App.1976). As such, it cannot be "tacked onto" a remote conviction and cause it to be treated as less than 10 years old. Therefore, appellant's five subsequent misdemeanor convictions do not overcome his remoteness objection. This record does not demonstrate specific facts and circumstances showing that the probative value of the prior conviction substantially outweighs its prejudicial effect, as required by rule 609(b). We conclude, therefore, that the trial court abused its discretion in admitting evidence of the 1977 conviction.

We next review the record to determine whether the error affected one of appellant's substantial rights. Tex.R.App. 44.2(b).[3] "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997) *citing with approval Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946). In *Kotteakos*, the Supreme Court stated:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or but had very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. But if one cannot

say, with fair assurance, after pondering all that has happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.

328 U.S. at 764–65, 66 S.Ct. at 1247–48 (citation omitted).

The State's case against appellant included the testimony of two police officers, one of whom observed the other remove the cocaine from appellant's possession. One police officer testified that one of the occupants of the room held a marihuana cigarette in his hand. There was a strong smell of marihuana in the room. Appellant and the other two individuals were sitting around a metal tray on which the police officer saw marihuana-like substance, rolling paper, and a lighter.

Appellant testified that neither he nor anyone else in the room was smoking marihuana. He denied seeing the metal table or any leafy substance placed on it. He admitted that he smelled something, but, although he was acquainted with the smell of marihuana, he could not identify the odor in the room. He denied possessing cocaine and theorized that one of the police officers put the cocaine into his coat pocket.[4] Neither of the other two suspects testified at trial.

The jury was instructed not to consider the 1977 conviction as any evidence of guilt, but to consider it only in weighing appellant's testimony. In closing arguments, there were three references to appellant's prior conviction. Defense counsel stated: "Remember this: 19 years ago he was convicted of something the Judge tells you to consider [sic] that if you wish to as to determine his credibility." The State referred to the 1977 conviction twice, first stating: "Mr. Hernandez came in and he testified—you can consider, you know, the facts that came out about him in his past. The Judge instructed you, you can." Later the State argued: "And also you know something else and this is some-

---

3. "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Tex.R.App. P. 44.2(b). Rule 44.2(b), effective September 1, 1997, is taken from Fed.R.Crim.P. 52(a) without substantive change.

4. The cocaine taken from appellant's pocket was inside small baggies, which were inside a large plastic envelope.

thing you can consider when judging his credibility. You know that this man has previously—is a convicted felon and previously been convicted of [sic] felony offense of delivery of marihuana. He wants you to believe that he smelled something but he didn't know what he smelled, didn't know what it was."

Appellant's entire defense rested on the jury's believing his testimony and disbelieving the State's witnesses. The State's entire case rested on the jury's believing the officers and not believing appellant. Therefore, the probative value of the prior conviction probably equaled, but did not substantially outweigh, its prejudicial value. We conclude that the evidence of his prior conviction had a substantial and injurious influence in the determination of the jury's verdict.

We sustain appellant's sole point of error.

We reverse the judgment and remand the cause to the trial court.

COHEN, J., concurs.

WILSON, J., dissents.

En banc consideration was requested. A majority of the Justices of the Court voted to overrule the request for en banc consideration.

TAFT, J., dissents from the overruling of the request for en banc consideration.

COHEN, Justice, concurring.

I agree with Justice Hedges's opinion. I write only to respond to Justice Taft's opinion.

Justice Taft agrees that the trial court erred by admitting the remote felony conviction. He criticizes the rule that only misdemeanors of moral turpitude can revitalize remote felony convictions. He contends the proper approach is that in *Theus v. State,* 845 S.W.2d 874 (Tex.Crim.App.1992).

*Theus* reached the same result as Justice Hedges's opinion; it reversed a judgment because a felony conviction was erroneously admitted and caused harm. *Id.* at 881–82. But *Theus* says nothing about the issue before us, whether misdemeanors that are not crimes of moral turpitude can revitalize prior convictions that are remote under rule 609(b). *Theus* does not mention rule 609(b); it does mention misdemeanors; it does not mention remoteness.

Justice Taft also discusses *Sinegal v. State,* 789 S.W.2d 383 (Tex.App.-Houston [1st Dist.] 1990, pet. ref'd). Like Justice Hedges's opinion and like *Theus, Sinegal* reversed a judgment because remote prior convictions were admitted. Most importantly, the *Sinegal* opinion repeatedly (three times) restated the rule that misdemeanors must be offenses of moral turpitude in order to refresh remote prior convictions. *Id.* at 387–88. *Sinegal* relied on *Davis v. State,* 545 S.W.2d 147 (Tex.Crim.App.1976), and *McClendon v. State,* 509 S.W.2d 851 (Tex.Crim.App.1974) (op. on reh'g), as does Justice Hedges.

Justice Taft recognizes the authority of *Davis v. State,* 545 S.W.2d 147, *McClendon v. State,* 509 S.W.2d 851, *Livingston v. State,* 421 S.W.2d 108 (Tex.Crim.App.1967), and *Blessett v. State,* 168 Tex.Crim. 517, 329 S.W.2d 434 (1959). Every one reversed a judgment for the same reason the panel majority does here. *Theus* did not mention, much less overrule, them. They are good law. I believe we are bound to follow them.

Finally, this damaging evidence was not harmless. The State didn't think so—it mentioned it twice in final argument. Indeed, the State argued in *Sinegal,* a drug case, that those remote priors were not very harmful because, unlike the primary offense on trial, they were not drug offenses. *See Sinegal,* 789 S.W.2d at 386. Here, the remote conviction was, like the primary offense on trial, a drug offense.

The law provides that a nonconstitutional error, like this one, "that does not affect substantial rights must be disregarded." Tex.R.App. P. 44.2. This type of error will often affect substantial rights. That is why it has caused the Court of Criminal Appeals to reverse so many cases. *See Davis, McClendon, Livingston, Blessett.* I believe it affected substantial rights here.

WILSON, Justice, dissenting.

Because I disagree with how the majority has applied the law to the specific facts of this particular case, I respectfully dissent.

I would hold the trial judge did not abuse her discretion in finding the predicate adequate to admit appellant's remote conviction. Even if the record would not support the admission of the conviction regarding appellant's credibility generally, I would find that the probative value of the conviction as impeachment evidence regarding appellant's ability to identify the odor of burning marihuana in the room he occupied was supported by specific facts and circumstances that substantially outweighed any prejudicial effect. Further, even if I am incorrect as to the admission of the conviction, I would hold that appellant was not harmed thereby.

Appellant's theory of the case, as argued by his counsel to the jury was, "that Mr. Hernandez was the classic example of being in the wrong place at the wrong time." The picture the defense offered was that appellant was watching TV, ignorant of the events around him. He was unable to identify the smell of burning marihuana in the same room, and the cocaine found in his pocket was put there by someone else.

The State's evidence indicated that several people were arrested for drug possession at the scene, and appellant was found in a room in which marihuana was being actively smoked and openly possessed. Police officers testified appellant was sitting before a metal tray that contained marihuana, rolling papers, and a lighter. The State took the position in argument that the main issue in the case was the credibility of the witnesses because of the conflict of testimony between appellant and the police officers.

I believe the evidence of the remote conviction was helpful to the jury in evaluating appellant's claim that he could not detect the odor of marihuana. The jury could have reasonably believed that appellant's history with marihuana proved he in fact knew what was happening at the house and that his story was a complete fabrication. For this reason, and others as set out in the State's brief, I would affirm.

TAFT, Justice, dissenting to the overruling of en banc consideration.

En banc consideration is disfavored and should not be ordered unless necessary to secure or maintain uniformity of the court's decisions or unless extraordinary circumstances require en banc consideration. TEX. R.APP. P. 41.2(c). Because the panel majority opinion employs a different analytical approach to the issue of admissibility of a remote prior conviction to impeach a witness than used by a panel of this Court in *Sinegal v. State,* 789 S.W.2d 383 (Tex.App.-Houston [1st Dist.] 1990, pet. ref'd), rule 41.2(c) provides that en banc consideration is required to secure or maintain uniformity of the court's decisions. I propose an approach that differs from that in the panel majority opinion, the panel dissenting opinion, and our prior *Sinegal* opinion. The approach I propose is the one taken by the Court of Criminal Appeals in *Theus v. State,* 845 S.W.2d 874 (Tex.Crim.App.1992), analyzing a different subsection of the same evidence rule at issue here.

## A. Pertinent Facts

The record reflects that defense counsel began opposing the admissibility of appellant's 19–year–old prior conviction in a pretrial hearing. Counsel argued that appellant ought to be allowed to testify and answer "no" to the State's question whether he had been convicted of a felony in the past 10 years. Counsel argued that two other felony convictions, 24 and 25 years old, were also too remote for impeachment purposes.

The trial court referred to the State's notice, pursuant to rule 609(f) of the Texas Rules of Criminal Evidence, of prior convictions it intended to introduce. That notice is in the record; it contains: (1) arson–1969; (2) burglary of a motor vehicle–1971; (3) delivery of marihuana–1977; (4) trespass–1979; (5) carrying a weapon–1983; (6) possession of controlled substance–1985; (7) possession of marihuana–1990; and (8) driving while intoxicated–1995. The trial court indicated it would allow the State to impeach appellant with the 1977 felony because of the intervening misdemeanors, and appellant asked the trial court to note his objection because mere misdemeanors should not be used to tack to allow admission of a remote felony.

During the State's case, the trial court told defense counsel it would allow both sides to develop the record further before the court ruled on the issue of impeachment with prior convictions under rule 609. After the State rested, the trial court took the matter up again. The State argued that appellant's convictions demonstrated he had not been rehabilitated since the release for his last felony conviction. Defense counsel got the State to clarify that appellant's arson conviction in 1969 was actually attempted arson in 1970. Defense counsel then argued that none of the misdemeanor convictions. involved moral turpitude so they were unavailable for impeachment. Counsel also pointed out that the felony convictions were too remote, from 19 to 25 years old. Defense counsel stated that rule 609 said something about probative value, and that the delivery of marihuana was the only felony even close. He pointed out that breaking and entering a motor vehicle is now a Class A misdemeanor.

The trial court reviewed each of appellant's prior convictions, verifying the identity, date of conviction, and time served on each. The prosecutor did not have some of the judgments on the remote felonies, prompting defense counsel to explain it was because they were so old. The trial court then found that the five misdemeanor convictions constituted conduct reflecting a lack of reformation so as to render the 1977 felony conviction admissible for impeachment. The trial court sustained appellant's objections to the other two prior felony convictions, however, on the basis they were too remote. Defense counsel asked for a ruling on impeachment with the prior misdemeanors, and the trial court sustained his objection on the basis none appeared to involve moral turpitude. Thus, it was decided that the prosecutor would be allowed to impeach appellant with his 1977 conviction for delivery of marihuana.

The next morning, when trial resumed, appellant initially took the stand out of the presence of the jury. He explained the details of his 1977 delivery of marihuana as amounting to giving a marihuana cigarette to a friend in the presence of another who apparently turned out to be a narcotics officer. Appellant was about 26 years old at the time he was convicted. He was sentenced to two years. Having heard this testimony, the trial court stood by its prior ruling. Defense counsel made further objection for the record based on the remoteness, the minor punishment assessed, and the details of the offense. Counsel argued the probative value did not outweigh the prejudicial effect, especially because it was a drug-oriented offense (as was the present offense). The trial court again maintained its same ruling, based on its assessment of the requirements of rule 609. The prosecutor moved in limine that appellant not be allowed to testify to the underlying facts, and the trial court granted the motion.

Appellant then testified in the presence of the jury. He claimed he had arrived at the duplex 15 or 20 minutes before the police. He was trying to get a ride to visit his sick father. Appellant admitted he was in the bedroom with Tony Norris and Tony's girlfriend. He denied that the door was closed, that he was smoking marihuana, that they were smoking marihuana, that he smelled burning marihuana (although he admitted smelling something), that there was a metal tray with a leafy substance on it, and that he had any cocaine in his pocket. Appellant claimed the police put the cocaine in his pocket, as they searched him. On cross-examination, appellant at first denied knowing anyone else in the house except Tony, but then admitted knowing some persons there. When asked whether he was waiting for his ride up by the front door, he said he went further into the residence to watch television. Again, appellant denied smelling marihuana, seeing anyone smoking marihuana, seeing anyone with a marihuana cigarette, seeing a tray on the floor, seeing any marihuana in the room, and knowing of any drugs in the house. The prosecutor then asked if appellant was the one convicted of delivery of marihuana in 1977. After not being allowed to give an explanation, appellant answered "yes." Again admitting he knew what marihuana smells like, appellant denied smelling any marihuana. Appellant did admit that he smokes marihuana, but denied that he was smoking on that occasion. On redirect, in violation of the motion in limine, defense counsel asked how much marihuana was in-

volved in the 1977 affair. The prosecutor objected, but appellant answered anyway (that he just gave a joint to a friend). The trial court sustained the prosecutor's repeated objection.

The jury charge contained an instruction that evidence of prior convictions could not be considered against the defendant as evidence of guilt in this case, that it was only admitted to aid, if it did, in passing upon the weight to be given his testimony, and not to consider it for any other purpose.

Defense counsel argued first. His argument took about three pages of the record, and nine minutes according to the docket sheet. He argued appellant was the classic example of being in the wrong place at the wrong time. He did not ask the jurors to do anything but what they thought was right. He reminded them that the 19–year–old conviction could be used only to determine appellant's credibility. He warned them to put the prosecutor's closing argument in context of his position as supporting the police. He argued there was room for reasonable doubt in this case. He urged them to consider the evidence in the light most favorable to appellant. He admitted he did not know if appellant's story about the police putting the cocaine in his pocket was accurate, but that was appellant's position. He ended by reminding the jury that the verdict must be unanimous.

The prosecutor argued for seven and one-half pages of the record. He reminded the jury about the children in the house, which he characterized as a dope house. He portrayed appellant as so interested in getting stoned that he ignored his surroundings. He drew an objection when he implied appellant possessed 14 packets in order to sell them. The prosecutor reviewed the evidence presented through the State's witnesses. Then he said the main issue was credibility of the witnesses, that the jury would have to choose between believing appellant or the police officers. The prosecutor mentioned the judge's instruction allowing the jury to consider the facts about appellant in the past. He then reviewed appellant's testimony, pointing out how incredible it was for appellant to be unaware of drugs throughout the house. The prosecutor explained the jury could consider appellant's prior conviction when judging his credibility. The prosecutor mentioned the conviction was for delivery of marihuana, and then argued appellant wanted the jury to believe he did not know what he smelled. He contrasted the motive appellant might have to lie with the officers' lack of motive. Asking the jurors if appellant's story made sense, the prosecutor concluded it was so ludicrous that defense counsel was even uncomfortable with it. Warned by the trial court he had one minute left, the prosecutor urged the jurors not to feel sorry for appellant because he cannot write, but do their duty and find appellant guilty based on the clear evidence of 14 packets of cocaine found in his pocket.

## B. Applicable Law

### 1. The Traditional Approach

This Court thoroughly summarized the law, as traditionally applied, in *Sinegal v. State,* 789 S.W.2d 383 (Tex.App.-Houston [1st Dist.] 1990, pet. ref'd):

Generally, the question of whether a defendant has a criminal past is irrelevant to any issue at the guilt/innocence stage of trial. However, as with any other witness, an accused puts his or her character for veracity, as opposed to moral character, in issue merely by taking the stand, and thus the accused's veracity may be impeached. *Hammett v. State,* 713 S.W.2d 102, 105 (Tex.Crim.App.1986). However, the Texas Rules of Criminal Evidence provide:

(a) **General Rule.** For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

(b) **Time Limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the

release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances *substantially* outweighs its prejudicial effect.

TEX.R. EVID. 609(a) & (b) (emphasis added).

Once a defendant in a criminal prosecution voluntarily takes the witness stand, the defendant is subject to the same rules as any other witness and may be impeached, contradicted, made to give evidence against himself, cross-examined on new matters, and treated in every respect as any other witness, except when there are overriding constitutional or statutory provisions. The fact that a witness, including the accused, has been charged with an offense, is inadmissible for impeaching the witness's credibility unless the charge has resulted in a final conviction for a felony or an offense involving moral turpitude, and even then *it must not be too remote. Alexander v. State,* 740 S.W.2d 749, 763 (Tex. Crim.App.1987) (emphasis added).

The question of remoteness of prior convictions is addressed largely to the discretion of the trial judge. The tendency has been to uphold admission of a prior conviction if the period of time between release from prison and trial is less than 10 years. However, the interval of time is not in itself the controlling factor and the facts of each case must determine if a prior conviction is too remote. *Davis v. State,* 545 S.W.2d 147, 150 (Tex.Crim.App.1976). Among the factors to be considered are: (1) the youthfulness of the accused at the time of the prior conviction; (2) subsequent conduct as reflecting lack of reformation; (3) the nature of the accusation and the facts and circumstances of the alleged offense; and (4) the length and severity of the penalty assessed. The date of trial is the controlling time for computation because the purpose of admitting prior convictions at the guilt stage of the trial is to allow impeachment. *Id.*

The reason for the adoption of the remoteness limitation on impeachment evidence is that a remote conviction is a poor indication of the accused's present character. A remote conviction must have occurred at a time sufficiently recent to have some bearing on the present credibility of the witness. *Miller v. State,* 549 S.W.2d 402, 403–404 (Tex.Crim.App.1977) (judgment reversed where defendant's three prior convictions admitted for impeachment, the most recent being 12 years old, and where there was no clearcut basis for admission).

While rule 609(b) generally provides that convictions more than 10 years old are inadmissible for impeachment purposes, trial courts are permitted to admit such convictions when the court determines that their probative value substantially outweighs their prejudicial effect. Texas courts traditionally have looked to evidence of lack of reformation or an intervening conviction for a felony offense or a misdemeanor involving moral turpitude as a circumstance which removes the remoteness objection to a conviction more than 10 years old. *Allen v. State,* 740 S.W.2d 81, 83 (Tex.App.-Dallas 1987, pet. ref'd) (where the defendant was twice convicted of a felony following his remote convictions, and one intervening conviction was for the same type of offense as one remote conviction, there is evidence of a lack of reformation, and thus, the trial court did not abuse its discretion in allowing the remote convictions in evidence); *McClendon v. State,* 509 S.W.2d 851, 856–57 (Tex. Crim.App.1974) (op. on reh'g) (trial court erred to defendant's prejudice in admitting conviction almost 13 years old where the two intervening convictions were for misdemeanors not involving moral turpitude).

*Sinegal,* 789 S.W.2d at 386–88 (footnote omitted).

## 2. The *Theus* Approach

Rather than follow this Court's traditional approach in *Sinegal,* the Fort Worth Court of Appeals used the *Theus* factors in a rule 609(b) analysis. *See Polk v. State,* 865 S.W.2d 627, 630 (Tex.App.-Fort Worth 1993, pet. ref'd). In *Theus,* the Court of Criminal Appeals took a new direction regarding the admissibility of a prior felony conviction to impeach a witness as a result of an analysis

of rule 609(a) of the Texas Rules of Criminal Evidence. *See Theus,* 845 S.W.2d at 879–81. The court relied on federal cases construing the similar federal rule of evidence and established a non-exclusive list of factors: (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the witness's testimony; and (5) the importance of the credibility issue. *Id.* at 880.

This Court did not have the benefit of the analysis of the Court of Criminal Appeals in *Theus* when we decided *Sinegal* two and one-half years earlier. Accordingly, we used the traditional approach which employed a four-factor test.

The panel majority appears to take a "plain language" approach to rule 609(b). It declines to follow a *Theus* approach and does not consider the approach taken in this Court's *Sinegal* opinion on the issue. The danger of taking a plain language approach or a traditional approach is that the Court of Criminal Appeals in *Theus* did not even mention, much less consider, either approach in analyzing a related issue from a different subsection of the same rule. Subsections (a) and (b) of rule 609 are closely related; one states the rule, while the other states the remoteness exception to the rule in deciding the admissibility of prior convictions to impeach the credibility of a witness. While admissibility of a remote conviction requires the proponent to meet a higher burden, there appears to be no reason for taking a fundamentally different analytical approach. Therefore, I propose that this Court adopt the *Theus* approach, realizing that the Court of Criminal Appeals provided a five-factor analysis that is not meant to be an exclusive list. *Theus,* 845 S.W.2d at 880.

## C. Analysis

**1. Impeachment Value of Remote Felony.** The impeachment value of a conviction is proportional to the extent to which the crime involved deception. *See Theus,* 845 S.W.2d at 881. Marihuana possession is a regulatory violation; it is not a crime per se.

Such violations are often called victimless crimes. Those who commit regulatory violations refuse to go along with the rules by which a majority of society agrees to live. There is nothing inherently deceptive about these crimes. Appellant was convicted of *delivery* of marihuana, however. This conjures up the idea of an unlawful business enterprise which is more insidious, and, to survive, likely employs deception. Appellant presented the facts of this remote conviction, however, and it involved appellant giving a joint of marihuana to a friend in the presence of an undercover officer. Thus, there is little, if any, probative value in appellant's remote felony conviction on the issue of credibility.

**2. Temporal Proximity and Subsequent History.** This factor will favor admission if the past crime is recent and if the witness has demonstrated a propensity for running afoul of the law. *Theus,* 845 S.W.2d at 881.

Appellant's felony conviction occurred 19 years before his testimony in this case. The remoteness of appellant's felony conviction weighs heavily against admission. This was not an isolated youthful escapade, however. Appellant was 26 years old at the time, and he had been convicted of two felonies before that. Since his conviction for delivery of marihuana in 1977, appellant was convicted of trespass in 1979, carrying a weapon in 1983, possession of a controlled substance in 1985, possession of marihuana in 1990, and driving while intoxicated in 1995. Appellant has definitely exhibited a propensity for running afoul of the law.

None of these subsequent misdemeanors involved moral turpitude, however, and the only one conceivably involving deceit is the trespass conviction. The record contains no proof of deception in appellant's trespass. Under the traditional law in Texas, only misdemeanors involving moral turpitude could be used as evidence of lack of rehabilitation in order to allow admission of a remote felony conviction. For example, in *Sinegal* we stated "Texas courts traditionally have looked to evidence of lack of reformation or an intervening conviction for a felony offense or a misdemeanor involving moral turpitude as a circumstance which removes the remote-

ness objection to a conviction more than 10 years old." *Sinegal,* 789 S.W.2d at 388. This is taken directly from *McClendon v. State,* 509 S.W.2d 851, 855 (Tex.Crim.App. 1974). On its face, this language contemplates a case-by-case analysis that examines whether remoteness is cured by: (1) evidence of lack of reformation; or (2) subsequent conviction of another felony; or (3) subsequent conviction of a misdemeanor involving moral turpitude.

In the very next paragraph of *McClendon,* however, is the statement, "A conviction of a misdemeanor which does not involve moral turpitude has not been considered as evidence of a lack of reformation." *Id.* The cases cited by *McClendon* for this proposition were *Livingston v. State,* 421 S.W.2d 108 (Tex.Crim.App.1967), and *Blessett v. State,* 168 Tex.Crim. 517, 329 S.W.2d 434 (1959). *McClendon,* 509 S.W.2d at 855. *McClendon* later repeated what had been said in the dissenting opinion on original submission, "Only a felony conviction or one for an offense involving moral turpitude will revitalize remote convictions." *Id.* at 856. *McClendon* went on to quote *Blessett,* as *Livingston* had done:

> The testimony introduced by the appellant, without objection, that she had not within the last ten years been convicted of a felony did not authorize the state to then prove that she had been convicted of murder over twelve years before the commission of the instant offense, unless there was first a showing that such prior conviction was not too remote due to a conviction of a felony or of a misdemeanor involving moral turpitude occurring since said conviction. 1 Branch 2 Ed., p. 210, sec. 190, and p. 213, sec. 192.

*McClendon,* 509 S.W.2d at 856–57, and *Livingston,* 421 S.W.2d at 108–09 (both quoting *Blessett,* 329 S.W.2d at 434–35). The genesis for the concept, that an intervening misdemeanor not involving moral turpitude does not show lack of reformation, appears to be Branch's Second Edition. Turning to the pages of Branch's cited in *Blessett,* however, one does not find the principle stated, or referred to, in the cases annotated there. Indeed, the best explanation for the principle

stated appears to be that the reader of Branch's mixed the two principles stated at the two pages referenced. The first one, the general rule, allows impeachment only with felonies or misdemeanors involving moral turpitude. The second one precludes impeachment with remote convictions, but provides an exception if lack of reformation is shown.

Although sparse facts are set out in *Blessett,* we find out in *Livingston* that after Blesset's 12–year–old prior felony conviction, he had several intervening misdemeanors not involving moral turpitude that caused the trial court to conclude the intervening misdemeanors triggered the exception from the general rule of remoteness. *See Livingston,* 421 S.W.2d at 108. We do not know how many that several amounted to, what their nature was, or over how long a period of time these several misdemeanors stretched. In *Livingston,* we know that after Livingston's 15–year–old prior felony conviction, there was one intervening misdemeanor conviction for carrying a pistol that occurred eight years after Livingston got out of prison and four years before trial on his current offense. *Livingston,* 421 S.W.2d at 108. In *McClendon,* a 23–year–old prior felony conviction, for which McClendon got out of prison 13 years before the current trial, was not revitalized by two misdemeanors for rude display of a firearm and driving while intoxicated three years before trial. *McClendon,* 509 S.W.2d at 854–55.

In *Davis,* the Court of Criminal Appeals rejected the State's argument that a 17–year–old conviction was admissible because three intervening misdemeanors showed lack of reformation. *Davis v. State,* 545 S.W.2d 147, 149–50 (Tex.Crim.App.1977). In *Davis,* the intervening misdemeanors were carrying a pistol and driving while intoxicated seven years before the current trial, and carrying a pistol one year before the current trial. *Id.* *Davis* relied on the same quotation from *McClendon* from which we originally departed to track down the genesis of the principle that misdemeanors not involving moral turpitude may not be used to demonstrate lack of reformation. *Davis,* 545 S.W.2d at 150.

There are four reasons why the principle, stated in *Davis, McClendon, Livingston,* and *Blessett,* that misdemeanors not involving moral turpitude cannot be considered evidence of lack of reformation, may not be controlling: (1) the unfirm foundation of the principle; (2) the distinctions between those cases and this one in terms of the number of misdemeanor convictions and the evenly spaced commissions over such a long period of time; (3) it appears to be contrary to language of *Theus* that speaks merely of "running afoul of the law"; and (4) it simply does not make sense that no matter how many misdemeanors not involving moral turpitude a defendant has committed since being released from prison for a remote felony, they could never amount to a showing of lack of reformation.

At some point, it is reasonable to conclude that a defendant who has continued to commit many misdemeanors, frequently, over a long period of time, shows a lack of reformation. This appears to be such a case. Here, appellant was convicted of attempted arson in 1970, burglary of a motor vehicle in 1971, delivery of marihuana in 1977, trespass in 1979, carrying a weapon in 1983, possession of a controlled substance in 1985, possession of marihuana in 1990, and driving while intoxicated in 1995.

Nevertheless, even if the number and frequency of appellant's misdemeanor convictions were sufficient to show lack of reformation, appellant's remote felony conviction is not a crime of deception. Therefore, while a large number of convictions for misdemeanors not involving moral turpitude might constitute a showing of lack of reformation, it is reasonable to require the lack of reformation to be from some crime of deception. This is not the case here.

**3. Similarity Between Remote Felony and Present Offense.** Similarity militates against admission. *Theus,* 845 S.W.2d at 881. Here, the crimes are both violations of the Controlled Substances Act. Indeed, the State argued that the manner in which the cocaine was packaged indicated appellant intended to deliver the cocaine in this case.

Under these circumstances, this factor weighs against admissibility.[1]

**4. Importance of Witness's Testimony.** Appellant's testimony was crucial to his defense; it *was* his defense. While other potential defense witnesses were obviously present during the offense, the record does not reflect they were available to testify. This factor weighs against admissibility.

**5. Importance of the Credibility Issue.** As so often will be the case, this factor counterbalances the fourth factor. As the importance of the witness's testimony increases, so generally will the importance of the credibility issue increase. The result, as usual, is a wash between the fourth and fifth factors.

**6. Other Factors.** There is another factor that could be considered under the peculiar facts of this case. It is the subject of the panel dissenting opinion, and it is addressed separately below under the heading "Impeachment Through 'Open Door.'" Even though the "open door" theory does not provide an independent basis for admissibility, it is possible that facts giving rise to an "open door" argument could supply a nudge toward admissibility under rule 609(b). This appears to be such a case.

**D. Summary**

Upon weighing the *Theus* factors, I would hold the trial court erred in finding the probative value of the remote felony conviction *substantially* outweighed the prejudicial effect. This does not end the inquiry, however, because if the remote conviction were admissible for any reason, the admission of it for the wrong reason would not constitute reversible error. *See Sewell v. State,* 629 S.W.2d 42, 45 (Tex.Crim.App.1982).

**Impeachment Through "Open Door"**

As was the situation in *Theus,* another possible reason for admission of prior convictions is when the witness "opens the door" by creating a false impression with the jury. *Theus,* 845 S.W.2d at 878. Here, despite

---

**1.** We observe that the prejudice of similarity is easily eliminated by not mentioning the nature of the prior felony of which the defendant was convicted. This was not done here.

evidence that marihuana was literally surrounding appellant, he claimed to be unaware of it. While admitting that he knew the smell of marihuana and that he smelled something, appellant still denied that he smelled marihuana. Appellant denied seeing marihuana on the metal tray in front of him and the other two occupants of the bedroom. Appellant denied that anyone was smoking marihuana.

Under these conditions, did appellant open the door to his prior convictions involving marihuana to impeach his feigned unawareness of his marihuana-laden environment? The open door exception to the rule against impeaching witnesses with prior convictions or extraneous offenses has been narrowly restricted to unambiguous claims of never having been arrested or convicted before. See *Delk v. State*, 855 S.W.2d 700, 704–705 (Tex.Crim.App.1993); *Lewis v. State*, 933 S.W.2d 172, 177–79 (Tex.App.-Corpus Christi 1996, pet. ref'd).

Appellant's creation of a false impression falls short of an unambiguous assertion of never having been arrested or convicted of a marihuana offense. Therefore, appellant's remote conviction for delivery of marihuana was not admissible under the open door doctrine.

**Harmless Error**

Having concluded the trial court erred in admitting appellant's 19–year–old conviction for delivery of marihuana, it remains to determine whether the error was harmless. The error in question is "other error" for which the burden is effectively on the appellant to show that the error deprived him of a substantial right. Tex.R.App. P. 44.2(b) ("Any other [non-constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim. App.1997) ("A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.").

Because appellant's 19–year–old conviction for delivery of marihuana was admissible at the punishment stage of trial, we need only determine if its admission at the guilt stage had a substantial and injurious effect on the jury's determination of its guilty verdict.

The State's case against appellant relied primarily on the testimony of two police officers, one of whom observed the other remove the cocaine from appellant's pocket. Appellant's testimony was that the officer planted the cocaine in his pocket. The jury's determination was who would win the proverbial swearing match.

The State's version was that appellant was found in a back bedroom with the door closed, he was sitting with two others around a metal tray with marihuana and rolling papers on it, one of the individuals (not appellant) was smoking marihuana, and the smell of marihuana was strong. Appellant's version was that he had come to catch a ride, had only gone into the bedroom (which was open) to watch television, no one was smoking marihuana, he smelled something that he could not identify (although he was acquainted with the smell of marihuana).

Appellant's prior conviction was mentioned only very briefly during cross-examination by the State. Even so, appellant was able to explain the fairly innocuous details of it in violation of the trial court's order granting the State's motion in limine. Defense counsel mentioned the trial court's charge limiting the jury's use of appellant's prior conviction to credibility only. The prosecutor mentioned the jury's ability to consider appellant's prior conviction twice in relation to appellant's credibility.

More telling, however, was defense counsel's acknowledgement that appellant's story that the officers planted the cocaine on him was his own. This was a signal the prosecutor emphasized by arguing that even appellant's attorney did not believe his story. Indeed, appellant's story was not credible. In addition to his feigned ignorance of his marihuana-laden environment, the prosecutor developed discrepancies in his testimony. For example, appellant first stated he only knew one person present in the house, but had to admit on further examination that he knew others. The State emphasized the respective motives to lie of the officers and appellant,

and the inherent incredibility of appellant's story.

While the error here impacted squarely on the primary issue in the case, I am not persuaded the jury would have found appellant's testimony any more credible without knowledge of his 19-year-old delivery-of-marihuana conviction. Accordingly, as the Fourteenth Court of Appeals ultimately found under a more onerous harmless error standard in *Theus,* I would hold the trial court's error in admitting appellant's remote felony conviction was harmless. *See Theus v. State,* 874 S.W.2d 121, 126 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd).

### Conclusion

I would overrule appellant's sole point of error and affirm the trial court's judgment. Nevertheless, regardless of the result, it would behoove this Court to grant en banc review in order to secure, or maintain, uniformity in the manner in which it analyzes a rule 609(b) issue concerning impeachment of a witness with remote convictions. To the majority's denial of en banc review, I respectfully dissent.

