Opinion issued November 3, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00756-CR

———————————

RODERICK EUGENE WOODARD, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 182nd Judicial District Court 

Harris County, Texas



Trial Court Case No. 1248152

 



 

MEMORANDUM OPINION

          A
jury found appellant, Roderick Eugene Woodard, guilty of the offense of injury
to a child[1] and assessed his punishment
at confinement for ninety-nine years.  In
his sole point of error, appellant contends that the trial court erred in denying
him the ability to impeach a State’s witness with evidence of the witness’s two
prior misdemeanor convictions.

          We
affirm.

Background

            Before trial, the State notified appellant
that one of its witnesses, the complainant’s mother, Athena Bradley, had three
previous criminal convictions.  In 2007, Bradley
was convicted of the felony offense of possession of a controlled substance in
Louisiana.  She also had misdemeanor
convictions for the offense of illegal operation of a sexually-oriented business
in 1998 and the offense of indecent exposure in 1996.  Before presenting its evidence, the State
moved to prevent appellant from using the misdemeanor convictions to impeach Bradley’s
testimony.  Appellant argued that the
misdemeanor convictions were admissible because they involved “moral turpitude”
and the felony conviction would “bridge the gap” to allow impeachment of
Bradley with the misdemeanor convictions. 
The trial court ruled that it would allow impeachment of Bradley with
the 2007 felony conviction but not with the previous misdemeanor convictions. 

          At
trial, Houston Fire Department paramedic Eugene Thomas testified that on
December 10, 2007, he was dispatched to Bradley’s apartment, where he found the
complainant, a one-year old girl, whose breathing “wasn’t adequate for a baby.”
 After paramedics placed a ventilation
mask on the complainant’s face, Thomas spoke briefly with appellant, who said that
“he was holding [the complainant] in his arms and he fell and he landed on top
of her at . . . the bottom of [a] landing.” 
Thomas noted that paramedics then took the complainant to a hospital as
a “serious trauma case.”  

Houston Police Department Officer
R. Tardy testified that he was dispatched to a hospital to investigate the
complainant’s injury as a potential case of child abuse.  He found the complainant in the hospital’s
pediatric Intensive Care Unit, and she looked “completely out of it” with
“massive swelling on the left side of the head.”  Tardy then interviewed appellant, who explained
that while he was carrying the complainant, he “slipped on some water . . . and
fell forward onto the baby.”  Appellant
said that he “tried to perform CPR . . . [and] call 911, but messed up because
he was nervous.”  Tardy explained that he
did not believe appellant’s description of the event because “when you are
walking, you slip and fall backwards[,] . . . you don’t slip and go forward.”

Dr. Stephen Fletcher, a pediatric
neurosurgeon, testified that he treated the complainant when her CAT scan
“necessitated the expertise of a neurosurgeon.” 
Fletcher explained that the complainant suffered a skull fracture on the
left side of her head, a “subdural hematoma,” which he defined as a “collection
of blood” on the surface of her brain, and a retinal hemorrhage.  The complainant also suffered from seizures
during her stay at the hospital.  Fletcher
noted that while he commonly treats infant skull fractures resulting from
falls, a subdural hematoma indicates “more of a trauma” and is “common with a
shaking of a baby with extreme force.” 
Fletcher explained that, taken together, the injuries indicated that the
complainant was “beaten up or something” and would not have been incurred only
as the result of a fall. 

Dr. Christopher Greeley, a
pediatrician, testified that he was part of a “consulting team” assigned to
review the complainant’s injuries.  At
the hospital, Greeley spoke with Bradley, Bradley’s mother, and appellant in an
effort to determine what had caused the complainant’s injuries.  He noted that appellant “made no verbal
responses” to his questions regarding the complainant.  Greeley then explained that the complainant’s
injuries would not likely have occurred as a result of a household accident and
were more consistent with “fall[ing] out of a two-story window” or being hit by
a car.   He opined that the injuries were
also consistent with an intentional infliction of “a significant amount of
force.”

Bradley testified that she left the
complainant with appellant, whom she was dating at the time, when she left to
take her other children to school.  When
she returned to her apartment, appellant was sitting in the kitchen holding the
complainant, who was “barely breathing.” 
Although appellant told her that he had attempted to call for emergency assistance,
Bradley noted that the telephone was still in its base.  Appellant told Bradley that he had slipped
while holding the complainant, but later, at the hospital, he seemed “like he
was hiding something.”  Appellant then claimed
that the complainant was “sitting on the rest room counter and she fell” and he
“shook” the complainant when he attempted to perform CPR on her.  On cross-examination, Bradley admitted that,
during their relationship, appellant would frequently watch her children while
she was at work.  

Standard of Review

In reviewing a trial court’s decision to admit or exclude
evidence of a prior conviction, we must accord the trial court “wide
discretion.”  Jackson v. State, 11 S.W.3d 336, 339 (Tex. App.—Houston
[1st Dist.] 1999, pet. ref’d).  A trial
court abuses its discretion
if it acts arbitrarily or unreasonably, without reference to any guiding rules
or principles.  Montgomery v. State, 810 S.W.2d
372, 380 (Tex. Crim. App. 1990).  An
appellate court will not reverse a trial court’s ruling unless that ruling
falls outside the zone of reasonable disagreement.  Torres v. State, 71 S.W.3d 758, 760
(Tex. Crim. App. 2002).  

Impeachment Evidence

          In his
sole point of error, appellant argues that the trial court erred in denying him
the opportunity to impeach Bradley’s testimony with the two misdemeanor
convictions because her “intervening felony conviction for possession of a
controlled substance . . . should have bridged the gap allowing impeachment”
and the denial of his right to “meaningful confrontational cross-examination” equates
to constitutional error of the first magnitude. 
See U.S. Const. amend. VI; Tex.
Const. art. I, § 10.

 Evidence of a
witness’s prior criminal conviction shall be admitted for purposes of
impeachment if the crime was a felony or a crime
of moral turpitude and the
court determines that the probative value of admitting the evidence of the
conviction outweighs its prejudicial effect.  Tex. R. Evid. 609(a).  However, such evidence is not admissible if
more than 10 years has elapsed since the date of the conviction or the witness’s
release from confinement, whichever is later, unless the court determines, in
the interests of justice, that the probative value of the conviction supported
by specific facts and circumstances substantially outweighs its prejudicial
effect.  Tex. R. Evid. 609(b).

Appellant had the burden of showing that Bradley had been
convicted of a felony or a crime involving moral turpitude,
either through her or by establishing her convictions by public record.  Id.; Sinegal v. State, 789 S.W.2d
383, 387 (Tex. App.—Houston [1st Dist.] 1990, pet. ref’d). A proponent seeking
to introduce evidence pursuant to rule 609 has the burden of demonstrating that
the probative value of a conviction outweighs its prejudicial effect.  Theus v. State, 845 S.W.2d
874, 880 (Tex. Crim. App. 1992).  A trial
court should conduct a balancing test to determine whether the probative value
of a prior conviction is outweighed by its prejudicial effect.  Hernandez v. State, 976 S.W.2d
753, 755 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d).  However, if a conviction is more than 10 years
old, the probative value must “substantially outweigh” any prejudicial effect.  Tex. R. Evid. 609(b); Jackson, 11 S.W.3d at
339.  In a standard rule 609(a) balancing
analysis, the following factors should be considered: (1) the prior conviction’s
impeachment value; (2) its temporal proximity to the offense on trial, and the
witness’s subsequent criminal history; (3) the similarity between the prior offense
and the present offense; (4) the importance of the witness’s testimony; and (5)
the importance of the credibility issue.  Hernandez, 976 S.W.2d at 755 (citing Theus, 845 S.W.2d
at 880).

Appellant argues that denying him the opportunity to impeach
Bradley with her two prior misdemeanor convictions violated his right under the
Confrontation Clauses of the United States and Texas Constitutions and, as a
result, “no showing of want of prejudice” will cure the alleged error.  See U.S. Const. amend. VI; Tex. Const. art. I, § 10; Davis
v. Alaska, 415 U.S. 308, 318, 94 S. Ct. 1105, 1111 (1974) (holding that
denial of effective cross-examination is “constitutional error of the first
magnitude and no amount of showing of want of prejudice would cure it”).  However, at trial, appellant objected to the
exclusion of the misdemeanor convictions only on the grounds that they were
crimes of moral turpitude.  He did not
object to the evidence on Confrontation Clause grounds and raises it for the
first time on appeal.  A Confrontation Clause
objection must be made in the trial court to preserve the complaint for review
on appeal.  See Paredes v. State, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004).  As a result, appellant’s Confrontation Clause
argument was waived.  See id. 

          Appellant
next argues that Bradley’s misdemeanor convictions were admissible because her
2007 felony conviction for possession of a controlled substance “bridge[s] the
gap” for her two previous misdemeanor convictions.  Texas courts have found that subsequent
convictions of a misdemeanor involving moral turpitude or a felony can indicate
a “lack of reformation,” making remote convictions “more palatable.”  Hernandez,
976 S.W.2d at 755; see also Medley v.
State, No. 01-07-00017-CR, 2008 WL 920342, at *3 (Tex. App.—Houston [1st Dist.] Apr. 3, 2008, no pet.)
(mem. op.) (“We recognize the practice of ‘tacking’ later convictions for
felonies or misdemeanors involving moral turpitude to remove the taint of
remoteness from prior convictions from more than 10 years before the trial.”).  However, even if a court “tacks” on a remote
conviction to a subsequent conviction, it is still subject to rule 609(a)’s requirement
that the probative value of the conviction outweigh any prejudicial effect.  Hernandez,
976 S.W.2d at 755; Tex. R. Evid. 609(a).  

          At
trial, appellant objected to the exclusion of the misdemeanor convictions on
the grounds that they were crimes of moral turpitude and the felony conviction
“would bridge the gap and allow it to go back.” 
Appellant made no argument that the probative value of the misdemeanor
convictions would outweigh any prejudicial effect.  On appeal, appellant asserts that the offense
of indecent exposure and operation of a sexually-oriented business are crimes
involving moral turpitude and the credibility of Bradley was “an essential
element in the case.”  Appellant also
asserts that his inability to cross-examine Bradley about the misdemeanor
convictions precluded the jury from “consider[ing] all the factors possibly
establishing ill feeling, bias, motive, and animus on her part.”

          Bradley’s
1996 offense of indecent exposure constitutes a crime of moral turpitude
because of the “intent to arouse or gratify [the] sexual desire of any person.”  See Polk
v. State, 865 S.W.2d 627, 630 (Tex. App.—Fort Worth 1993, pet. ref’d).   Even
assuming that her 1998 offense of illegal operation of a sexually-oriented
business also constitutes a crime of moral turpitude, there is no indication
that Bradley’s prior convictions would have had much impeachment value.  Although Bradley testified about appellant’s
conflicting explanations for the incident, much of her testimony concerned the
trip to the hospital and the extent of the complainant’s injuries.  Moreover, appellant did not attempt to
impeach Bradley with her felony conviction, even though the trial court ruled
it admissible.  And, although appellant asserts
that cross-examination may have shown the “ill feeling, bias, motive, [or]
animus” of Bradley, he fails to explain how the misdemeanor convictions would
have established any such bias.  Thus,
even assuming that the felony conviction did “bridge the [temporal] gap” for
the misdemeanor convictions, the trial court could have reasonably concluded
that their probative value was outweighed by any prejudicial effect.  See
Tex. R. Evid. 609(a).  Accordingly, we hold that the trial court did
not abuse its discretion in excluding Bradley’s misdemeanor convictions from
evidence.  See Montgomery, 810 S.W.2d at 380.

          We
overrule appellant’s sole point of error.          

Conclusion

          We
affirm the judgment of the trial court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Sharp, and Brown.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code ann. § 22.04(a)
(Vernon 2011).