**Opinion issued June 30, 2014**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

## NO. 01-12-00485-CR

————————————

**RONIE WAYNE SMITH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Case No. 1276338**

---

## O P I N I O N

A jury convicted appellant Ronie Wayne Smith of aggravated sexual assault of a child less than 14 years old. *See* TEX. PENAL CODE ANN. § 22.021 (West 2011). The trial court determined punishment, sentencing Smith to 25 years in

prison. The judgment also reflects $484.00 in statutory court costs. On appeal, Smith argues that the trial court erred by permitting the State to question him about a misdemeanor conviction for indecent exposure that was more than 10 years old. He also challenges the sufficiency of the evidence to support the assessment of $484.00 in statutory court costs. We affirm, as modified to correct the spelling of Smith's name and the assessment of mandatory statutory costs of court supported by the record.

## Background

The indictment in this case alleged that Ronie Wayne Smith unlawfully, intentionally, and knowingly caused the sexual organ of the 13-year-old female complainant to contact his own sexual organ. The evidence showed that late one night after buying a snack at a convenience store, the complainant encountered Smith. She saw him before she climbed over a fence on her way to an apartment complex. Smith held her bag as she climbed over the fence. Once she was on the other side, he returned the bag and then began touching her breasts and genitals over her clothing. The complainant cried, kicked, and screamed for him to stop, but he grabbed her, forced her to the ground, and raped her. The complainant then returned to the apartment where she was staying. She testified that the assault was painful and that she bled for several days afterward.

2

The complainant did not immediately report the assault. More than a week later, she told her teacher about the rape, and the teacher referred her to a school counselor. The counselor spoke with her, called her mother, and reported the outcry to the police. Houston Police Department Officer F. Medina met with the complainant and her family at their home. At first she was embarrassed to speak with him in front of her family, but when he pulled her aside, she was "extremely detailed" in describing the assault. She described the attacker's clothing, and she noted that "he had several marks on his face," "very bad teeth," and "one of his toenails was missing." She told Officer Medina that she would be able to recognize him.

Officer Medina contacted the counselor, who "basically gave the same statement but in less detail" as had the complainant. The complainant's parents took her to Texas Children's Hospital where she underwent a sexual assault examination, which revealed internal and external abrasions in her genital area that were consistent with her outcry. However, because of the passage of time since the assault, no DNA evidence was collected.

The day after the complainant's outcry, her family members told her that they thought they knew the identity of her attacker and that they had seen him near the place where the assault occurred. They drove her to the location, where she saw

3

Smith and identified him as the man who raped her. When she left with her mother to call the police, several of her relatives attacked Smith in retaliation for the rape.

H.P.D. Sergeant D. Schlosser was on patrol when he was dispatched to the scene of the assault on Smith. He described the scene as "tremendously chaotic" with people "yelling, screaming, [and] hollering" "various things," including "he's a rapist." Sgt. Schlosser testified that the complainant and her mother were present and that he understood the crowd to consist of her friends and family. Smith was sitting in front of a house, and he was injured and bleeding. Sgt. Schlosser accessed a copy of the police report regarding the sexual assault, which included the complainant's detailed description. Sgt. Schlosser asked Smith to remove his shoes, and he observed that Smith's feet were "very unkempt," had a "very putrid, pungent smell," and "the pinky toes almost appeared as though they didn't have a toenail." Suspecting that Smith was the alleged assailant, Sgt. Schlosser contacted the Juvenile Sex Crimes investigators while Smith was treated by a Houston Fire Department ambulance crew.[1]

---

[1] While in the ambulance, Smith asked to speak to a police officer. When Sgt. Schlosser approached him, Smith blurted out, "Just go ahead and give me the case." Sgt. Schlosser asked him what he meant, and Smith replied, "Just go ahead and give me the case because if I stay out here they're going to kill me." Sgt. Schlosser then read Smith his *Miranda* rights, contacted the Juvenile Sex Crimes sergeant, and assigned an officer to accompany Smith to the hospital to ensure that he would not escape.

4

H.P.D. Officer E. Hanson with the Juvenile Sex Crimes Division followed up with the complainant and her mother. She also prepared a photographic lineup from which the complainant identified Smith. In addition, the complainant gave a statement that was consistent with what she had previously told other officers.

Officer Hanson interviewed Smith, who waived his rights to remain silent and to an attorney and gave a recorded statement. In the statement, he initially denied having come into contact with the complainant, but when Officer Hanson mentioned the possible existence of DNA evidence, Smith said he had helped her with her bag.

Prior to trial, the State filed a notice of its intent to use evidence of Smith's 29 prior convictions, ranging in date from January 1994 through January 2010. The offenses included: 10 convictions for criminal trespass; three convictions for terroristic threat; three convictions for theft crimes; three convictions for possession of a controlled substance; two convictions for unlawfully carrying a weapon; and one conviction each for assault, indecent exposure, evading detention, evading arrest, resisting arrest, criminal mischief, delivery of a controlled substance, and public intoxication.

Trial was held in May 2012. The complainant, the police officers, and the sexual assault nurse examiner all testified. The nurse recounted what the complainant had told the doctor when she was seen at the hospital, and this

5

recollection was consistent with the complainant's own trial testimony. The nurse testified that there was physical evidence of sexual trauma, but on cross-examination she conceded that she could not determine if it was caused by consensual or nonconsensual sexual intercourse.

Before Smith testified, the court held a hearing outside the presence of the jury to determine which of his prior convictions would be admissible for impeachment. The State sought to introduce for the purpose of impeachment all of Smith's felony offenses from the 10 years prior to trial (two felony convictions for possession of a controlled substance, a felony conviction for theft as a third offender, a felony conviction for theft from a person, and a felony conviction for delivery of a controlled substance) and two convictions from more than 10 years prior to trial (felony theft from a person in 2001 and misdemeanor indecent exposure in 1999). Smith did not oppose the use of the 2001 conviction for theft from a person or the felony convictions that were within the 10-year time frame.

However, he objected to the admission of the 1999 misdemeanor conviction for indecent exposure. The State characterized that offense as a crime of moral turpitude that was "highly relevant" to this case. Smith's attorney argued:

> I believe it's highly prejudicial. I mean, it's over ten years old. Just the fact, you know, the nature of the description of the offense is prejudicial. It—and, like I say, Judge, it's over ten years old and my understanding—I should have researched this and given it to the Court, but my understanding is that the tacking laws are in doubt. I

6

would argue that they don't apply and it should be inadmissible under the Rules of Evidence as improper impeachment.

. . . .

The indecent exposure we're talking about is 13 years ago. It's a misdemeanor, and I don't know if that's a crime of moral turpitude.

. . . .

But even so, Judge, we're talking about a 13-year-old misdemeanor and just the description, considering the fact that my client's charged . . . with aggravated sexual assault of a child, I think it's going to carry a lot more—it's going to be very prejudicial and I don't—I just—because of the description and what's called . . . any relevance is going to be outweighed by the prejudicial effect it will have on the jury.

The State argued that the 1999 conviction was admissible despite its remoteness because Smith had been convicted of additional crimes every year thereafter in which he was not in custody. The court ruled that the felony theft convictions were admissible but the felony drug convictions were not. The court further ruled: "With regard to the 1999 indecent exposure, in weighing whether or not the probative value of admitting the evidence outweighs its prejudicial effect, this Court finds that the probative value does outweigh its prejudicial effect and is, therefore, admissible."

Smith then testified, and he repeatedly denied raping, fondling, or assaulting the complainant in any way, saying, "She might have been raped, but I know it wasn't me that raped her. She might have the wrong person." He initially denied

having seen the complainant prior to trial, but on cross-examination, he admitted that he held her bag on the night of the assault.

The State also asked Smith about his prior felony convictions for theft as a third offender, theft from a person (twice), and delivery of a controlled substance. As to the indecent exposure conviction, the State asked only:

Q. And then you were convicted of indecent exposure in 1999, but that one was a misdemeanor, correct?

A. Yes.

Q. That's a crime of moral turpitude. Do you know what that means?

A. No, ma'am.

Closing arguments centered on the credibility of the complainant and Smith. The prosecutor repeatedly said, "the truth doesn't change," as she contrasted the consistent statements made by the complainant to police officers, medical professionals, and her school counselor, with the inconsistencies in Smith's testimony, for example whether he had seen the complainant on the night of the assault. The prosecutor also urged the jurors, in assessing the complainant's credibility, to reflect on her demeanor while testifying, the physical evidence of sexual trauma, and the detailed description she gave of her assailant which closely matched Smith. The State did not mention Smith's prior conviction for indecent exposure in closing argument. Smith's attorney also focused on the credibility of

8

the witnesses, arguing, "[s]ometimes complaining witnesses lie," and suggesting that the complainant could have had "consensual sex with another boy" and "needed to pin it on somebody."

The jury returned a guilty verdict, the trial court assessed punishment, and Smith appealed.

## Analysis

### I. Admissibility of prior conviction for indecent exposure

In his first two issues, Smith contends that the trial court erred by admitting evidence of his 1999 conviction for indecent exposure during the guilt-or-innocence phase of trial, because doing so violated Rules of Evidence 403 and 609. Smith argues on appeal that the probative value of his conviction for indecent exposure does not outweigh its prejudicial effect, the conviction was too remote, the impeachment value was minimal, and the nature of the prior conviction and its similarity to the charged offense created a risk that the jury would consider it as character conformity evidence. We review a trial court's admission of extraneous offense evidence under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Id.* at 343–44 (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (on rehearing)).

9

When a defendant testifies at trial, he is subject to cross examination in the same manner as any other witness. *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010). Rule 609 of the Texas Rules of Evidence provides that evidence of a witness's prior conviction of a felony or crime of moral turpitude shall be admitted for purposes of impeachment if the court determines that the probative value of admitting the conviction outweighs its prejudicial effect. TEX. R. EVID. 609(a); *Morris v. State*, 67 S.W.3d 257, 263 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). The court must balance probative value and prejudice by considering (1) the prior conviction's impeachment value; (2) its temporal proximity to the crime on trial, and the defendant's subsequent criminal history; (3) the similarity between the prior offense and the present offense; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue. *Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992); *see Hernandez v. State*, 976 S.W.2d 753, 755 (Tex. App.—Houston [1st Dist.]), *pet. ref'd*, 980 S.W.2d 652 (Tex. Crim. App. 1998).

However, when the conviction is more than 10 years old, Rule 609(b) requires the court to conduct a different analysis. *Hernandez*, 976 S.W.2d at 755. In such a situation, before a court may admit such evidence, it must determine that "the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." TEX. R. EVID. 609(b).

This ten-year period is measured from the date of trial in which the prior conviction is to be offered as evidence, rather than the date of the charged offense, because the evidence is relevant under Rule 609, if at all, to show whether the defendant is credible at trial. *See Davis v. State*, 545 S.W.2d 147, 150 (Tex. Crim. App. 1976). Ordinarily, "[r]emote convictions are inadmissible because of a presumption that one is capable of rehabilitation and that his character has reformed over a period of law abiding conduct." *Morris*, 67 S.W.3d at 263. But subsequent convictions for felonies or misdemeanors involving moral turpitude can "remove the taint of remoteness from the prior convictions" by showing a lack of reformation. *Id.* (citing *Hernandez*, 976 S.W.2d at 755). In that situation, we balance the probative value and prejudicial effect of the prior conviction under Rule 609(a)'s "outweigh" standard—instead of Rule 609(b)'s "substantially outweigh" standard—because "the 'tacking' of the intervening convictions renders convictions more than 10 years old no longer remote." *Id.*

Smith was convicted of the misdemeanor offense of indecent exposure in 1999. After that conviction, Smith was convicted of the felony offenses of theft from a person in 2001, delivery of a controlled substance in 2003, theft from a person in 2005, possession of a controlled substance in 2006, theft as a third offense in 2008, and possession of a controlled substance in 2009. These repeated felony convictions demonstrate Smith's lack of reformation and remove the taint of

11

remoteness from his indecent exposure conviction. *See Morris*, 67 S.W.3d at 263. Accordingly, we will apply the Rule 609(a) standard to determine if the trial court erred in admitting evidence of this prior conviction. *See id.*

We begin by considering the first *Theus* factor: the impeachment value of the prior conviction. *See Theus*, 845 S.W.2d at 880. Indecent exposure is a crime of moral turpitude. *See Tristan v. State*, 393 S.W.3d 806, 812–13 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing *Polk v. State*, 865 S.W.2d 627, 630 (Tex. App.—Fort Worth 1993, pet. ref'd)). Crimes of moral turpitude involve a "grave infringement of the moral sentiment of the community," *Hardeman v. State*, 868 S.W.2d 404, 405 (Tex. App.—Austin 1993, pet. dism'd) (quoting BLACK'S LAW DICTIONARY 1008–09 (6th ed. 1990)), or show "a moral indifference to the opinion of the good and respectable members of the community." *Escobedo v. State*, 202 S.W.3d 844, 848 (Tex. App.—Waco 2006, pet. ref'd). "Offenses involving moral turpitude carry a higher impeachment value." *Martin v. State*, 265 S.W.3d 435, 444 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Theus*, 845 S.W.2d at 881; *see also Moreno v. State*, 22 S.W.3d 482, 488 (Tex. Crim. App. 1999). As Smith has conceded, this factor weighs in favor of admissibility.

The second *Theus* factor is the temporal proximity of the crime to trial and the defendant's subsequent criminal history. *Theus*, 845 S.W.2d at 880. As we have explained, although this prior conviction is outside the 10-year period

established by Rule 609, Smith's many subsequent convictions show a lack of reformation, weighing in favor of admission. *See Rodriguez v. State*, 129 S.W.3d 551, 560 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (holding that the second *Theus* factor weighed in favor of admissibility of prior convictions that were more than ten years old because defendant's criminal history showed "a propensity for, and a history of, running afoul of the law").

The third *Theus* factor is the similarity between the prior offense and the present offense. *Theus*, 845 S.W.2d at 880. Smith argues that indecent exposure and aggravated sexual assault of a child are such similar offenses that the admission of evidence of the indecent exposure conviction would cause the jury to regard him as a "sexual deviant" who would be more likely to be guilty of aggravated sexual assault of a child, and therefore this element weighs against admissibility. In *Theus*, the Court held that this factor weighs against admission if the prior conviction and the charged offense are similar because "admission for impeachment purposes of a crime similar to the crime charged presents a situation where the jury would convict on the perception of a past pattern of conduct, instead of on the facts of the charged offense." *Id.* at 881. In this case, however, we disagree with Smith's contention that indecent exposure is so similar to aggravated sexual assault of a child as to create a risk that the jury would convict on an improper basis.

Indecent exposure is a "sexual offense," found in Chapter 21 of the Texas Penal Code, which requires for its commission that a person expose "his anus or any part of his genitals with intent to arouse or gratify the sexual desire of any person, and he is reckless about whether another is present who will be offended or alarmed by his act." TEX. PENAL CODE ANN. § 21.08 (West 2011). Aggravated sexual assault of a child is an "assaultive offense," found in Chapter 22 of the Texas Penal Code, which requires for its commission that the actor intentionally or knowingly cause contact or penetration involving the sexual organ of the actor or the child or both. *Id.* § 22.021(a)(1)(B). It also requires an aggravating element such as causing serious bodily injury; placing the victim in fear of death, serious bodily injury, or kidnapping of the victim or others; using or exhibiting a deadly weapon; or that the victim is a child younger than 14 or an elderly or disabled individual. *See id.* § 22.021(a)(2).

Intent to gratify a sexual desire is not an element of aggravated sexual assault of a child; and neither contact nor penetration is an element of indecent exposure. *Compare id.* § 21.08, *with id.* § 22.021. While identity of the person to whom the indecent exposure is directed is not an element of that offense, *see Wallace v. State*, 550 S.W.2d 89, 91 (Tex. Crim. App. 1977), the victim's characteristic of being a child is an essential element of the offense of aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B). In short,

indecent exposure is a crime of depravity, *see Polk*, 865 S.W.2d at 630, whereas aggravated sexual assault of a child is a crime of violence. *See Wisdom v. State*, 708 S.W.2d 840, 842–43 (Tex. Crim. App. 1986). Although both crimes involve sexual elements, they are not so similar as to weigh in favor of exclusion of the indecent exposure conviction.

Finally, we consider the related fourth and fifth *Theus* factors: the importance of the defendant's testimony and the importance of the credibility issue. These two factors are related because "both depend on the nature of a defendant's defense and the means available to him of proving that defense." *Theus*, 845 S.W.2d at 881. Here, Smith had no alibi witness, and his defensive theories appeared to be mistaken identity and that the complainant was lying. For example, Smith testified, "She might have been raped, but I know it wasn't me that raped her. She might have the wrong person." In closing, Smith's attorney argued, "Sometimes complaining witnesses lie." There were no eyewitnesses, no surveillance videos, and no DNA test results in this case. At trial the only other defense witness was a nephew, who testified that he did not know anything about Smith's whereabouts at the time the complainant was assaulted. Aside from the nephew's testimony, the evidence in this case consisted of Smith's testimony and the testimony of the State's witnesses. Thus the importance of his testimony and credibility were heightened. *See id.* "As the importance of the defendant's

credibility escalates, so will the need to allow the State an opportunity to impeach the defendant's credibility." *Id.* These elements weigh in favor of admission of the prior conviction for indecent exposure.

Having found that the *Theus* factors weigh in favor of admissibility, we conclude that the trial court reasonably could have concluded that the probabtive value of admitting evidence that Smith was previously convicted of indecent exposure outweighs its prejudicial effect. *See* TEX. R. EVID. 609(a). We therefore hold that the trial court did not err by admitting the evidence, and we overrule Smith's first issue.

Smith's second issue argues that the court abused its discretion by admitting the very same evidence of his prior conviction for indecent exposure because doing so violated Rule of Evidence 403, which provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." TEX. R. EVID. 403. We have already explained the probative value of the evidence in regard to impeachment in this case, in which the evidence consisted of only Smith's testimony and that of the State's witnesses. However, under our Rule 609 analysis, we concluded that the probative value of the evidence was greater than its prejudicial effect. Having so concluded, we cannot find that the risk of unfair prejudice was substantially greater than the probative value. It is not. As we have said, the probative value of the evidence is greater than the prejudicial

16

effect. We therefore overrule Smith's second issue. *Compare* TEX. R. EVID. 403, *with* TEX. R. EVID. 609.

## II.   Court costs

In his third issue, Smith argues that the evidence is insufficient to support the assessment of court costs. The trial judge signed a judgment that assessed $484.00 in court costs. A supplemental clerk's record was filed in this case. It indicated that the court held a hearing sua sponte and ordered that a judgment nunc pro tunc be entered to increase the amount of court costs assessed. The spelling of Smith's first name was also changed from the incorrect spelling of "Ronnie" to the correct spelling, "Ronie."

Smith filed several objections to the supplemental clerk's record. However, having reviewed the record on appeal, we have identified an independent reason why we must disregard the judgment nunc pro tunc entered in this case: the trial court lacked jurisdiction to enter it at the time it purported to do so. In criminal cases, "Once the record has been filed in the appellate court, all further proceedings in the trial court—except as provided otherwise by law or by these rules—will be suspended until the trial court receives the appellate-court mandate." TEX. R. APP. P. 25.2(g). Nunc pro tunc proceedings in criminal cases are governed by Rule 23 of the Texas Rules of Appellate Procedure. "Unless . . . the defendant

has appealed, a failure to render judgment and pronounce sentence may be corrected at any time by the court's doing so." TEX. R. APP. P. 23.1.

In this case, the judgment was originally rendered in open court on May 10, 2012, and a written judgment was entered on the same date. Smith also filed a notice of appeal on May 10, 2012. The clerk's record was filed in this court on July 9, 2012, and the reporter's record was filed on September 8 and September 10, 2012. The purported nunc pro tunc judgment was entered in February 2013. This was after Smith had appealed, *see id.*, and after the record had been filed in the appellate court. *See* TEX. R. APP. P. 25.2(g). Accordingly, we hold that the trial court had no jurisdiction to enter a nunc pro tunc judgment in February 2013. *See* TEX. R. APP. P. 23.1, 25.2(g); *see Green v. State*, 906 S.W.2d 937, 939 (Tex. Crim. App. 1995) ("[O]nce the trial record has been filed with the Court of Appeals or this Court, the trial court no longer has jurisdiction to adjudicate the case."); *State v. Gutierrez*, 143 S.W.3d 829, 831 (Tex. App.—Corpus Christi 2004, no pet.) ("The filing of the appellate record . . . severs the trial court's jurisdiction to adjudicate the case."); *cf. Meineke v. State*, 171 S.W.3d 551, 558 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (holding that filing of notice of appeal did not deprive trial court of jurisdiction when appellate record had not yet been filed); *Ware v. State*, 62 S.W.3d 344, 353–54 (Tex. App.—Fort Worth 2001, pet. ref'd)

(holding that entry of nunc pro tunc judgment was not untimely when entered after filing of notice of appeal and before filing of appellate record in court of appeals).

Having determined that the purported nunc pro tunc judgment was entered without jurisdiction to do so, we will not rely upon that document or any other part of the supplemental record to decide this appeal. Moreover, we note that Smith appealed only from the May 2012 judgment, which we now consider.

Smith argues that the evidence is insufficient to support the judgment against him assessing court costs in the amount of $484.00. He first argues that the record is silent as to the amount of costs owed because there is no certified bill of costs in the record and that assessment of court costs in the absence of a bill of costs violates his right to due process. The Court of Criminal Appeals has rejected these arguments. *See Johnson v. State*, 423 S.W.3d 385, 392–96 (Tex. Crim. App. 2014). In addition, he argues that there is no way to determine whether any attorney fees were included in the assessment of costs. We disagree with this proposition because the amount of costs is governed by statute, as to which the defendant is charged with constructive notice. *See id.* at 389.

The State, for its part, argues that the assessment of $484.00 is supported by the record and by law and, indeed, under mandatory court-cost statutes and the facts of this case, the trial court should have assessed costs in the amount of $574.00. The State also argues that the court costs are not ripe for review before an

19

attempt is made to collect them; that argument has also been rejected by the Court of Criminal Appeals. *See id.* at 391.

"[W]e review the assessment of court costs on appeal to determine if there is a basis for the cost, not to determine if there was sufficient evidence offered at trial to prove each cost." *Id.* at 390. A defendant convicted of a felony offense must pay certain statutorily mandated costs and fees. *See id.* at 394. These fees vary depending on the type of offense and procedural history of the case. *See Owen v. State*, 352 S.W.3d 542, 546 n.5 (Tex. App.—Amarillo 2011, no pet.) (providing an extensive list of Texas statutes requiring convicted persons to pay costs and fees). The record demonstrates that Smith was convicted of a felony in district court, supporting each of the following costs:

(1) $250 DNA record fee that is mandated for someone convicted of aggravated sexual assault;[2]

(2) $133 consolidated court cost for conviction of a felony;[3]

(3) $5.00 for summoning a witness, incurred 11 times for a cost of $55.00;[4]

---

[2] TEX. CODE CRIM. PROC. ANN. art. 102.020(a)(1) (West Supp. 2013) ("$250 on conviction of an offense listed in Section 411.1471(a)(1), Government Code," including aggravated sexual assault).

[3] TEX. LOC. GOV'T CODE ANN. § 133.102(a)(1) (West Supp. 2013) ("A person convicted of an offense shall pay as a court cost, in addition to all other costs . . . $133 on conviction of a felony.").

(4)    $40.00 to the clerk's office;[5]

(5)    $25.00 district court records preservation fee;[6]

(6)    $20.00 additional jury fee;[7]

(7)    $6.00 for support for the judiciary;[8]

(8)    $5.00 for making an arrest without a warrant;[9]

(9)    $5.00 as a commitment fee;[10]

---

[4]    TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(3) (West Supp. 2013) ("A defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer . . . $5 for summoning a witness.").

[5]    *Id.* art. 102.005(a) (West 2006) ("A defendant convicted of an offense in a county court, a county court at law, or a district court shall pay for the services of the clerk of the court a fee of $40.").

[6]    *Id.* art. 102.005(f) ("A defendant convicted of an offense in a . . . district court shall pay a fee of $25 for records management and preservation services performed by the county as required by Chapter 203, Local Government Code.").

[7]    *Id.* art. 102.004(a) ("A defendant convicted by a jury in a . . . district court shall pay a jury fee of $20.").

[8]    TEX. LOC. GOV'T CODE ANN. § 133.105(a) (West 2008) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $6 to be used for court-related purposes for the support of the judiciary.").

[9]    TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(1) ("$5 for . . . making an arrest without a warrant").

(10) $5.00 as a release fee on each case including release to the Texas Department of Criminal Justice;[11]

(11) $5.00 security fee;[12]

(12) $5.00 jury summons fee;[13]

(13) $4.00 jury reimbursement fee;[14]

(14) $4.00 for the court technology fund;[15]

(15) $2.00 for support of indigent defense.[16]

---

[10] *Id.* art. 102.011(a)(6) ("A defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer . . . $5 for commitment or release").

[11] *Id.*

[12] *Id.* art. 102.017(a) (West Supp. 2013) ("A defendant convicted of a felony offense in a district court shall pay a $5 security fee as a cost of court.").

[13] *Id.* art. 102.011(a)(7) ("$5 for summoning a jury, if a jury is summoned").

[14] *Id.* art. 102.0045(a) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $4 to be used to reimburse counties for the cost of juror services as provided by Section 61.0015, Government Code.").

[15] *Id.* art. 102.0169(a) ("A defendant convicted of a criminal offense in a . . . district court shall pay a $4 county and district court technology fee as a cost of court.").

[16] Tex. Loc. Gov't. Code Ann. § 133.107(a) (West Supp. 2013) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to other costs, a fee of $2 to be used to fund indigent defense representation through

These fees total $564.00:

$250.00 (DNA record fee)
$133.00 (consolidated court cost for conviction of a felony)
 $55.00 (summoning witnesses fee)
 $40.00 (clerk's office fee)
 $25.00 (district court records preservation fee)
 $20.00 (additional jury fee)
  $6.00 (support for the judiciary fee)
  $5.00 (commitment fee)
  $5.00 (making arrest without a warrant)
  $5.00 (release fee)
  $5.00 (security fee)
  $5.00 (jury summons fee)
  $4.00 (jury reimbursement fee)
  $4.00 (court technology fund)
  $2.00 (support of indigent defense fee)
$ 564.00

The trial court assessed costs in the amount of $484.00. The record shows a basis for assessing costs in at least that amount, not including any assessment for attorney's fees. We overrule Smith's third issue. *See Johnson*, 423 S.W.3d at 389, 396.

## III. Reformation of the judgment

"[A]n appellate court has authority to reform a judgment to include an affirmative finding to make the record speak the truth when the matter has been called to its attention by any source." *French v. State*, 830 S.W.2d 607, 609 (Tex.

the fair defense account established under Section 79.031, Government Code.").

23

Crim. App. 1992) (citing *Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.—Dallas 1991, pet. ref'd)); *accord Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (holding that an appellate court has the power to correct and reform a trial judgment to make the record speak the truth when it has the necessary data and information to do so); *see also* TEX. R. APP. P. 43.2(b).

We note that the trial court's May 2012 judgment does not accurately comport with the record in that it misspells Smith's first name as "Ronnie" not "Ronie." The record on appeal demonstrates that Smith's first name is spelled with only one "n." The record supports modification of the judgment with regard to the spelling of Smith's first name, and accordingly, the trial court's judgment is modified to reflect that Smith's first name is "Ronie" not "Ronnie."

Finally, the State in its brief has requested that we reform the judgment to assess the full measure of mandatory costs applicable upon conviction. Just as an appellant in a criminal case has a statutory remedy to correct erroneous or unsupportable costs, separate and apart from directly appealing the judgment of conviction,[17] the Code of Criminal Procedure also contemplates that the State may

---

[17] *See* TEX. CODE CRIM. PROC. ANN. art. 103.008; *Johnson v. State*, 423 S.W.3d 385, 392 (Tex. Crim. App. 2014).

revisit the amount of costs due by filing an appropriate motion in the trial court.[18]

Thus, to the extent the State seeks to collect court costs in excess of those already assessed in the judgment, filing a motion in the trial court ordinarily would be preferable to presenting such a request to the appellate court on direct appeal. However, in light of the fact that we have already reviewed the record concerning court costs in conjunction with our resolution of Smith's challenge to those costs in this appeal, it would not serve judicial efficiency to require the State to relitigate that issue in a separate proceeding. As detailed above, we have determined that the applicable mandatory statutory costs identified by the State amount to be $564.00, and we will modify the judgment in this case to so reflect.

---

[18] *See* TEX. CODE CRIM. PROC. ANN. art. 103.007 ("After a defendant has paid costs, no more costs may be charged against the defendant *unless the court rules on a motion presented to the court that additional costs are due.*" (emphasis supplied)).

## Conclusion

We modify the original judgment dated May 10, 2012 to reflect the correct spelling of Smith's first name and mandatory statutory costs of court in the amount of $564.00, and as modified, we affirm.


Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.

Publish. TEX. R. APP. P. 47.2(b).