NO. 11-14-00143-CR            ORIGINAL

TO the

Criminal Appeals Court of TEXAS

Capitol Station

Austin Texas

RECEIVED IN
COURT OF CRIMINAL APPEALS

NOV 09 2015

Abel Acosta, Clerk

---

John Edward Holmes

Appellant,

V.

The State of Texas

Appellee.

FILED IN
COURT OF CRIMINAL APPEALS

NOV 09 2015

Abel Acosta, Clerk

---

Appeal from Cause NO. CR-42,068
238th District Court, Midland County, Texas
Hon. Elizabeth B. Leonard, Judge Presiding

Brief of Appellant

---

CHRistine Schwartz
State Bar Number: 24056733
1007 W. Texas AVE
Midland, TX 79701
432-279-1479
432-279-1478 FAX
Attorney for Appellant

Honorable
Judge, Elizabeth Byer leanard
208 District Court 500 N loraine St, Ste 800 Midland, TX 79701
NO. CR 39.464
Fact
Day four of my trial I saw the D.A
in the same room as the Jury.

Fact Detective Rodriguez sane Examination
evidence logger, and Rodriguez the Midland
county Jail officer are family
Jail officer Rodriguez testimony was that she no
me from in and out of the Jail. Fact I'm from Ala as of 201
Fact I am from Alabama no one no me in
Midland they all stick together there.
I had no one in my defense.
Fact DA and my Atorney made deals with each other
about my case.

## Inconsistencies In Chiquita Spears story And States Exibit

When Mrs. Spears was at the Midland Memorial Hospital at 2:00 in the afternoon Dec 3, 2011 Spears told the People at the Hospital that she had been allegedly Raped on the Sofa in the police Report she say the alleged Rape happen on the Matrix.

In facted there was no alleged sexual Assault at all but the Appelliate recieved a 15 year sentence for alleged Rape

In Fact in Spears testimoney she stated that Appellait was to big for her Vagina I spite of her prostitute Conviction She received Sep 1999. Prostitutes Don't measure anything but Money. No one investigated or examine me the appelliate to see if I was infact to big for the alleged Crime. Fact Spears never Complain of my size at all. Fact onlything spears complained about was the amount of money I was giveing her. FAct From the time spears came to Midland to be with me the Appelliate she had consent sex allmost every day and night. FAct Dec 1, 2011 spear ask me to give her $600 from my check so she could pay her Probation off. I told her I had to pay rent she got mad. I was takeing a shower Sep 27, 2011 when I finish Spears came into the bathroom mad because she had talked to Cylinda my baby Mother Spears grabed my genitals" after about two to three minutes of pain I did the onlything I could to get away," that was to bite her on her shoulder. FAct Donna Doyle the examiner said that she could not telll how old the bruise was or how she got it. Spears did not tell the trueth during her testimony. Spears made a statement to my baby brother that I will not be the for my baby. Please mail picture back when finish.

CC

Respectfully

# Ineffective Assistance of Councel   10-20-15

Mark H. Dettman was my Attorney for my trial Case NO. CR 39464 First of all 7-17-13 I ask Mr Dettman to file for a speedy trial and he never respond to that. After sitting in jail for allmost 2 years Mr. Dettman got me out threw pretrial where I had to report once a week. For almost a year. While I was out I would go by Mr Dettmans Office and ask him to lets talk about my case he was allways busy so he tell me. Mr. Dettman never investigated my case or did he ever called or subpoena my witnesses to Court. Mr. Dettman gave me erroneous advice when he suggest tha I not get on the Stand for my Defense. Page 145 4:29 - 149 4:33 of Court reporter Dettman did not Object when the DA ask me to come up on the stand at the end of the trial. Mr. Dettman never investigated the prenutcy of Cylinda White the mother to my unbore child which gave spears modive to end my life. Spears was Drunk or Intoxicated the night of the Alleged Rape.

Pantria Whitfield 432-559-1894 witnes Spears Drunk the day before on the apartment patio standing in a Chair when she fell drunk when I was across the streed paying my rent. Magret the Cashier at the liquor store across the street of the apartment Nebly and Midland Dr. Mark Dettman never argued that when examination was going on at the hospital by examiner Doyle Spear was never examine for dreigs. which is one thing on her Spear background. Trial Court abused its discretion when gave me Christine Schwartz as the appellate appeals Attorney she Come from the same office as Rick Navernete Who Droped me as Attorney Case in 2013 in Judge Gillis Court for the same alleged rape. Rick Navernete cussed and pointed his finger at me and called me Nigger in 2013 Same Office very unprofesional 432-279-1478   CC



In The

# Eleventh Court of Appeals

_____

No. 11-14-00143-CR

_____

## JOHN EDWARD HOLMES, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause No. CR39464**

## MEMORANDUM OPINION

The jury found Appellant, John Edward Holmes, guilty of sexual assault[1] and assessed punishment at confinement for a term of fifteen years. The trial court sentenced Appellant accordingly. Appellant asserts a sufficiency issue and an evidentiary issue on appeal. We affirm.

### I. *The Charged Offense*

The grand jury indicted Appellant for the offense of aggravated sexual assault. The jury found Appellant guilty only of the lesser included offense of

---

[1]TEX. PENAL CODE ANN. § 22.011(a)(1)(A) (West 2011).

sexual assault. A person commits the offense of sexual assault if the person intentionally or knowingly "causes the penetration of the anus or sexual organ of another person by any means, without that person's consent." PENAL § 22.011(a)(1)(A). As charged in this case, "without consent" means that the actor compels the other person to submit or participate by the use of physical force or violence or that the actor compels the other person to submit or participate by threatening to use force or violence against the other person and that the other person believes that the actor has the present ability to execute the threat. *See id.* § 22.011(b)(1), (2). The offense of sexual assault is a second-degree felony. *Id.* § 22.011(f). The range of punishment for a second-degree felony is confinement for not more than twenty years or less than two years. *Id.* § 12.33(a).

## II. *Evidence at Trial*

The victim, C.S., testified that she lived with Appellant from October 26, 2011, to December 3, 2011, in Midland, Texas. The two met at a bus station in Montgomery, Alabama, in April of that year, and after several months of communication, C.S. moved in with Appellant and began a romantic relationship with him. The relationship deteriorated after C.S. learned of Appellant's possible infidelity, and C.S. confronted him about it at his place of work. After Appellant attempted to dispel C.S.'s concerns, C.S. left but returned later to pick him up at the end of his shift. On the way back to Appellant's apartment, Appellant became increasingly angry at C.S.'s silence toward him. After they arrived at the apartment, C.S. remained silent as Appellant threatened to rape her.

Appellant then moved some of C.S.'s belongings outside, and as C.S. exited the apartment, Appellant grabbed her by the hair, placed her in a headlock, and took her back into the apartment. C.S. testified that the headlock restricted her breathing. She said that Appellant stated, "[Y]ou're going to give me my p---y." Appellant continued to assault her and restrict her breathing before he tore off her

2

clothes, took her into the bedroom, threw her onto an air mattress, forced open her legs, and penetrated her vagina with his penis. C.S. said Appellant "violently" raped and hurt her. She testified that he said after the assault, "That's my p---y" and "a raped p---y is the best p---y." After the rape, C.S. told Appellant she was going to report the rape to the police. Appellant responded, "No. We're going to take a shower," and he attempted to wash away the evidence from her vaginal area with antibacterial soap.

C.S. remained at the apartment that night, fearing that Appellant would harm or kill her if she attempted to leave. C.S. dropped off Appellant at work the next morning and returned to his apartment. C.S. packed her belongings and vandalized Appellant's apartment. Afterward, C.S. went to Midland Memorial Hospital for treatment and a sexual assault evaluation.

Donna Doyle, a certified sexual assault nurse examiner (SANE), testified she was a nurse at Midland Memorial Hospital. Doyle testified she took a medical history from C.S. and performed a sexual assault examination shortly after C.S. arrived at the hospital. Doyle completed a body surface and genital examination. She collected hair and blood evidence from C.S.; scrapings and swabs from C.S.'s fingernails; swabs from C.S.'s mouth, vagina, and anus; and a debris swab from a bite mark. Doyle noted that C.S. had bruises on her fingers, arms, and above an elbow; a bite mark on her inner upper arm; and vaginal injuries consistent with sexual assault. Doyle testified that C.S. identified Appellant as her attacker, but Doyle said she could not rule out the possibility that the bruises and injuries resulted from consensual sex.

Detective Rodriguez testified she took C.S's statement at the hospital just before the SANE examination. Detective Rodriguez's investigation led her to suspect Appellant of the crime. When Appellant was questioned at the Midland

3

Police Department, after he received and waived his *Miranda*[2] rights, Appellant never mentioned he had a sexual relationship with C.S. However, when the DNA samples were taken, Appellant volunteered to Detective Steven Sanders of the Midland Police Department, without being asked any questions, that Appellant had sexual relations with C.S. "all the time."

Detective Sanders testified that he took DNA swabs from Appellant and gave them to Detective Rodriguez. Detective Rodriguez obtained the results of the SANE examination and logged them into evidence; he did the same with the DNA swabs. Those DNA swabs were tested by Caitlyn Lott, a forensic DNA analyst, and by Sarah Rothwell, a forensic DNA scientist—both of whom were employed by the Texas Department of Public Safety Crime Laboratory.

Rothwell testified that she tested samples from Appellant's swabs and samples from C.S.'s blood and vaginal swabs. Rothwell testified that, as to the "DNA profile from the sperm fraction of the vaginal swab, suspect Holmes cannot be excluded as the contributor of the major component in the profile" and that the probability of selecting an unrelated person at random to be the source of the major component was "one in 20.62 sextillion"[3] for African-Americans. She opined with a reasonable degree of scientific certainty that Appellant was the source of the major component in the DNA profile.

### III. *Issues Presented*

Appellant first argues that the evidence was insufficient to support a conviction for the lesser included offense of sexual assault. Second, Appellant argues that the trial court abused its discretion when it excluded C.S.'s prior conviction for prostitution.

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[3]Sextillion is a cardinal number represented in the United States by one followed by twenty-one zeros.

4

## IV. *Standard of Review*

The standard of review for sufficiency of the evidence is whether any rational jury could have found Appellant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We review all of the evidence in the light most favorable to the jury's verdict and decide whether any rational jury could have found each element of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd).

The standard of review for the admission or exclusion of evidence is an abuse of discretion standard, and the trial court is to be afforded wide discretion in ruling on the admissibility of a prior conviction. *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992). The trial court has the discretion to include or exclude evidence of a victim's prior criminal convictions. *Jones-Jackson v. State*, 443 S.W.3d 400, 402 (Tex. App.—Eastland 2014, no pet). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Even if the trial court gave the wrong reason for its decision, the decision will be upheld as long as it is correct on some theory of law applicable to the case. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

## V. *Analysis*

We will first address Appellant's challenge to the sufficiency of the evidence. We will then address his second issue regarding the exclusion of C.S.'s 1999 conviction for prostitution.

5

*A. Issue One: Sufficiency of the Evidence*

Appellant argues that the evidence at trial was insufficient to support his conviction because C.S.'s actions after the sexual assault did not reflect the actions of a typical sexual assault victim. Appellant further argues that the lack of acute vaginal injury was inconsistent with sexual assault and was evidence of consensual sex and his innocence. Sexual assault victims do not react uniformly. *Shaw v. State*, 764 S.W.2d 815, 818 (Tex. App.—Fort Worth 1988, pet. ref'd) (expert testimony that victims of "acquaintance rape" often remain calm after the assault and delay reporting it). The morning after the sexual assault, C.S. returned to Appellant's apartment and vandalized it, including the air mattress on which she was sexually assaulted; C.S. then left Appellant's apartment with her belongings and later reported the crime to the police. C.S. also took some of Appellant's personal belongings from the apartment because she hoped he would call the police.

C.S. initially went to the hospital for treatment, and the police were called when C.S. explained why she was there. After C.S. reported the sexual assault to the police, she was taken to a different location for a SANE examination. Doyle treated C.S., and Doyle testified that C.S. sustained an injury to her vagina. Appellant claimed there was no assault because there was no acute injury to the labia majora, labia minora, and vagina. But Doyle outlined that, in ninety-four percent of sexual assault cases, there is no acute injury to the labia majora, labia minora, and vagina. Doyle also testified that C.S.'s account was consistent with the injuries she suffered and that those injuries indicated an assault took place.

Detective Rodriguez took C.S.'s statement at the hospital before the sexual assault examination. Detective Rodriguez obtained the results of the examination and logged them into evidence. Detective Sanders testified he took buccal swabs from Appellant as part of an investigation of Appellant. Once the DNA samples

6

were tested, Appellant could not be ruled out as the contributor of the sperm portion from C.S.'s vaginal swab. The probability that the sperm belonged to someone else was at least one in 20.62 sextillion.

C.S. described in detail how Appellant threatened her, tore off her clothes, threw her onto the air mattress in the bedroom, forced her legs apart, and violently penetrated her vagina with his penis without her consent. The jury may believe all, some, or none of a witness's testimony because the jury, as factfinder, is the sole judge of the weight and credibility of the witnesses. *Sharp*, 707 S.W.2d at 614. The jury was free to believe C.S. We defer to the jury's resolution of any conflicting inferences raised in the evidence and presume that the jury resolved such conflicts in favor of the prosecution. *Jackson*, 443 U.S. at 318; *Brooks*, 323 S.W.3d at 894; *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). We have reviewed the record, and we hold that a rational jury could have found beyond a reasonable doubt that Appellant sexually assaulted C.S. We overrule Appellant's first issue.

### B. Issue Two: The Exclusion of the Victim's Prior Prostitution Conviction

Appellant argues he should have been allowed to introduce evidence that C.S. had a prior conviction for prostitution. The trial court forbade Appellant from impeaching C.S. with a remote misdemeanor conviction for prostitution. The trial court found that the probative value of the 1999 conviction was outweighed by its prejudicial effect.

A trial court has the discretion "to impose reasonable restrictions or limits on cross-examination without violating an accused's constitutional right to confront witnesses." *Nevels v. State*, 954 S.W.2d 154, 157 (Tex. App.—Waco 1997, pet. ref'd). Rule 609(a) provides that a witness's character for truthfulness may be attacked by evidence that the witness has been previously convicted of a felony

7

crime or a crime of moral turpitude, regardless of punishment, if the trial court determines that the probative value of the evidence outweighs its prejudicial effect and the evidence is elicited from the witness or established by a public record. TEX. R. EVID. 609(a); *Jones-Jackson*, 443 S.W.3d at 402; *see also* TEX. R. EVID. 412 (admissibility of evidence of victim's previous sexual conduct). Rule 609(b) limits the reach of Rule 609(a) by providing that a conviction more than ten years old is inadmissible, unless the court determines that "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." TEX. R. EVID. 609(b).

Appellant argues the "tacking" doctrine applies and requires an analysis under the standard of "outweighs," under Rule 609(a), rather than the standard of "substantially outweighs," under Rule 609(b). But the tacking doctrine, as we have recently held, no longer applies, and the "substantially outweighs" standard in Rule 609(b) is the exclusive standard to use to determine the admissibility of C.S.'s remote convictions. *Jones-Jackson*, 443 S.W.3d at 403.

The Court of Criminal Appeals set out the following factors in *Theus* to weigh the value of such evidence: (1) the impeachment value of the prior crime, (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent criminal history, (3) the similarity between the past crime and the offense being prosecuted, (4) the importance of the witness's testimony, and (5) the importance of the witness's credibility. 845 S.W.2d at 880.

Prostitution is a crime of moral turpitude. *Holgin v. State*, 480 S.W.2d 405, 408 (Tex. Crim. App. 1972); *Husting v. State*, 790 S.W.2d 121, 126 (Tex. App.—San Antonio 1990, no pet.). But the impeachment value of an admission of such a conviction is low in C.S.'s case because such an admission would not have made her allegations less credible, given the other evidence in the case. And, although C.S.'s credibility was an important part of the case, the lack of deception involved

8

in the remote conviction and the lengthy time period between that conviction and the present trial weighed heavily against the inclusion of the remote conviction for prostitution. In addition, the similarity factor is inapplicable here because C.S. was the victim of the crime. We have weighed all the relevant factors, and we hold that the trial court did not abuse its discretion when it prohibited Appellant from impeaching C.S. with her remote misdemeanor conviction for prostitution. We overrule Appellant's second issue.

## VI. *Conclusion*

We have reviewed the record and hold that there was sufficient evidence for a rational jury to find beyond a reasonable doubt that Appellant committed the offense of sexual assault. We also hold that the trial court did not abuse its discretion when it excluded evidence of C.S.'s remote conviction for prostitution.

## VII. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON
JUSTICE

August 21, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

*COPY*

# LIST OF PARTIES AND RESPECTIVE COUNSEL

Pursuant to Tex. R. App. P. 38.1(a), Appellant John Edward Holmes certifies that the following is a complete list of the names and addresses of the parties to the final judgment and their respective counsel:

### *Appellant*

JOHN EDWARD HOLMES
*1536 East I-10*
*Ft. Stockton, TX 79735*
*(At his last known address)*

CHRISTINE SCHWARTZ
STATE BAR NO. 24056733
Attorney at Law
1007 W. Texas Ave.
Midland, Texas 79701
*Appellate Counsel*

MARK H. DETTMAN
Attorney at Law
415 W. Wall St., Suite 101
Midland, Texas 79701
*Trial Counsel*

### *Appellee*

THE STATE OF TEXAS

TERESA CLINGMAN
Midland County District Attorney
Midland County Courthouse
500 N. Loraine
Midland, Texas, 79701
*Appellate Counsel*

STEVE STALLINGS
Midland County District Attorney
Office
Midland County Courthouse
500 N. Loraine
Midland, Texas, 79701
*Trial Counsel*

ii

COPY

**Trial Judge**

HON. ELIZABETH B. LEONARD
238th District Court
Midland County Courthouse
Midland, Texas, 79701

# TABLE OF CONTENTS

LIST OF PARTIES AND RESPECTIVE COUNSEL ...................................... ii

TABLE OF CONTENTS ........................................................................ iv

INDEX OF AUTHORITIES .................................................................... v

ISSUES PRESENTED/POINTS OF ERROR ........................................... 3

STATEMENT OF FACTS ...................................................................... 4

STATEMENT OF THE CASE ............................................................... 9

SUMMARY OF THE ARGUMENT ........................................................ 12

ARGUMENT AND AUTHORITIES .........................................................

and Pictures

POINT OF ERROR NUMBER ONE:
The evidence by the State at Trial was legally insufficient
to support a conviction for the offense of Sexual Assault ...
.................................................................................................. 13

POINT OF ERROR NUMBER TWO:
The trial court abused its discretion when it excluded the
victim's prior criminal convictions that were more than 10
years old ................................................................................. 18

PRAYER .......................................................................................... 23

CERTIFICATE OF SERVICE ............................................................... 24

CERTIFICATE OF COMPLIANCE ........................................................ 25

**INDEX OF AUTHORITIES**

COPY

## UNITED STATES SUPREME COURT CASES

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)............................................................................... 13

## TEXAS COURT OF CRIMINAL APPEALS CASES

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) ................. 13,14

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)............... 14

*Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App. 1996)........................ 14

*King v. State*, 29 S.W.3d 556 (Tex. Crim. App., 2000) ........................... 13

*Wesbrook v. State*, 29 S.W.3d 103 (Tex. Crim. App. 2000).................... 14

## TEXAS COURTS OF APPEALS CASES

*Downer v. Aquamarine Operations, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)................................................................................. 18

*Hernandez v. State*, 976 S.W.2d 753, 755–56 (Tex. App.—Houston [1st Dist.]) .................................................................. 20, 21, 22

*Leyba v. State,* 416 S.W.3d 563, 567 (Tex. App.-Houston [14 Dist.] 2013)............................................................................ 20

*McClendon v. State,* 509 S.W.2d 851, 855–57 (Tex. Crim. App. 1974) (op. on reh'g) ................................................................ 20

*Menchaca v. State,* 901 S.W.2d 640 (Tex. App. - El Paso, 1995, pet. ref'd) ................................................................................ 13

*Montgomery v. State*, 810 S.W. 272, 291 (Tex. Crim. App. 1990)............. 18

COPY

***Rodriguez v. State***, 5 31 S.W.3d 359, 363 (Tex. App.—San Antonio 2000, pet. ref'd) .......................................................................... 19, 20, 21, 22

***Sinegal v. State***, 789 S.W.2d 383, 388 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). ............................................................................... 20

## STATUTORY PROVISIONS

Tex. R. Evid. 609 .............................................................................. 18

NO. 11-14-00143-CR

TO the

Criminal Appeals Court of Texas

Capitol Station

Austin Texas

John Edward Holmes

Appellant,

V.

The State of Texas

Appellee.

Brief of Appellant

Appeal from Cause NO. CR-39,464

238th District Court, Midland County, Texas

Hon. Elizabeth B. Leonard, Judge Presiding

To The Court of Appeals

John Edward Holmes respectfully submitts

This brief of Appant in the

1

*COPY*

above-entitled and numbered cause. The following terms and conditions have the following meanings:

1) Appellant *COPY Here* ........................ John Edward Holmes

2) State ........................................ Appellee, State of Texas

3) Spears ................................................ Chiquita Spears

4) Rodriguez .................................... Detective Rose Rodriguez

5) Sanders ................................. Seargent Steven Sanders

6) Doyle ..................................................... Donna Doyle

7) Lott ...................................................... Caitlyn Lott

8) Rothwell .............................................. Sara Rothwell

9) RR Vol. x, p. x ........................ Volumes 1-6 of 6 Volumes of the Official Reporter's Record, page no. x.

10) CR Vol. x, p. x ........................ Volume 1 of 1 Volume of the Official Clerk's Record, page no. x.

*COPY*

## ISSUES PRESENTED FOR REVIEW

### POINT OF ERROR NUMBER ONE:

The evidence *pictures* by the State at Trial was insufficient to support a conviction of Sexual Assault.

### POINT OF ERROR NUMBER TWO:

The trial court abused its discretion when it excluded the victim's prior criminal convictions that were more than 10 years old.

## STATEMENT OF FACTS

Chiquita Spears, (hereinafter Spears) and Appellant met in April 2011 in Montgomery, Alabama. Soon after meeting, Spears and Appellant started a romantic relationship. By October 2011 Spears moved to Midland, Texas to live with Appellant. Spears testified that the first couple of weeks into the relationship everything was good.[1] According to Spears she and Appellant had consensual sex two to three times a week.[2] However, the relationship starting going south when Spears suspected Appellant was cheating on her.[3] On December 2, 2012, Spears confronted Appellant at his work about her beliefs of him cheating.[4] According to Spears, she had made the decision to end the relationship and return to her home in Houston.[5] Even though Spears had made the decision to leave, Spears picked up Appellant from work later that day. According to Spears,

---

[1] R.R. Vol. 3, p. 22.

[2] R.R. Vol. 3, p. 23.

[3] R.R. Vol. 3, p. 24-25.

[4] R.R. Vol. 3, p. 25.

[5] *Id.*

Appellant was angry that Spears wanted to return to Houston.[6] Once at the apartment, Appellant began to make a series of threats. While Spears gathered her clothes, Appellant allegedly put his arm around her neck and grabbed her hair.[7] Spears testified she could barely breathe.[8] Appellant began to beat her in living room. Spears testified that Appellant took off her jeans and took her into the bedroom.[9] Once in the bedroom Appellant continued to threaten Spears.[10] Appellant allegedly forced Spears's clothes off, lifted her legs and forcibly had sex with her.[11] After the alleged incident, Spears made no attempts to leave the apartment for help.[12] She had her own vehicle and Appellant did not own one at the time.[13] Spears took Appellant to go get food. Spears testified that she stayed the night and

---

[6] R.R. Vol. 3. P. 26-27.

[7] R.R. Vol. 3, p. 32-35.

[8] Id.

[9] R.R. Vol. 3, p. 36-37.

[10] R.R. Vol. 3, p. 37.

[11] R.R. Vol. 3, p. 38.

[12] R.R. Vol. 3, p. 43.

[13] R.R. Vol. 3, p. 70.

slept next to Appellant in the bedroom.[14]

The next day, December 3, 2011, Spears took Appellant to work at 6:00 in the morning.[15] After dropping off Appellant at work, she returned to the apartment. Spears broke dishes and cut up the air mattress.[16] She took Appellant's only decent pair of jeans and took his DVD player.[17] Spears testified that she made no attempts to call the police or anyone for help.[18] Spears in fact returned to the apartment to destroy some of Appellant's property. According to Spears she wanted Appellant to call the police.[19] It was not until later in the afternoon of December 3rd that Spears went to the hospital complaining of pain and the alleged rape.[20] While at the hospital Donna Doyle (hereinafter Doyle) performed a sane exam on Spears. Doyle performed a series of tests and gathered slides, blood

---

[14] R.R. Vol. 3, p. 43-44.

[15] R.R. Vol. 3, p. 81.

[16] R.R. Vol. 3, p. 83.

[17] Id.

[18] R.R. Vol. 3, p. 43-47.

[19] R.R. Vol. 3, p. 46. ← My Police report was not recovert Appellant I called the police myself

[20] R.R. Vol. 3, p. 47-48.

6

samples, hair samples, and oral swabs. According to Doyle, Spears had multiple small bruises on her body.[21] Doyle could not tell the age of the bruises by looking at them.[22] Although Spears claimed Appellant choked her, Doyle saw no bruises around Spears' neck.[23]

After performing a vaginal exam, Doyle noted no bruising or trauma.[24] There were no acute injuries. Detective Rodriguez (hereinafter Rodriguez) was assigned lead detective to the case. Rodriguez testified that she met Spears at the Midland Memorial Hospital at about 2:00 in the afternoon of December 3, 2011.[25] That same afternoon Rodriguez made contact with Appellant. According to Rodriguez, Appellant was cooperative.[26] Sergeant Sanders (hereinafter Sanders) obtained the DNA sample of Appellant. According to Sanders, Appellant was cooperative with him as

---

[21] R.R. Vol. 3, p. 32.

[22] R.R. Vol. 3, p. 146.

[23] R.R. Vol. 3, p. 147.

[24] R.R. Vol. 3, p. 151. 1

[25] R. R. Vol. 3, p. 96.

[26] R.R. Vol. 3, p. 111.

well.[27] The evidence from the sane exam and the DNA sample of Appellant was sent to the lab for testing. Caityln Lott (hereinafter Lott) prepared the samples for testing. Lott testified that there was semen on the vaginal swabs.[28] Sarah Rothwell (hereinafter Rothwell) analyzed the samples that Lott collected. According to Rothwell, Appellant was the source of the semen.[29]

On January 27, 2012, Appellant was indicted for the charge of aggravated sexual assault and assault family violence by choking. On May 12, 2014 appellant's case was called for trial in the 238th Judicial District Court of Midland County, Texas. Appellant by and through his trial counsel, Mark H. Dettman, appeared at trial and pled not guilty to the charges. The State called a total of six witnesses, however; only Spears was able to testify regarding the actual incident. There were no other witnesses to the incident. Appellant called no witnesses during the guilt/innocence phase of trial. After a 4-day trial appellant was found guilty of the lesser-included sexual assault. Appellant was sentenced to 15 years confinement in the

---

[27] R.R. Vol. 3, p. 118.

[28] R.R. Vol. 4, p. 12.

[29] R.R. Vol. 4, p. 38.

8

institutional division of the Texas Department of Criminal Justice. Appellant now appeals.

## STATEMENT OF THE CASE

Pursuant to Rule 38.1(b) of the Texas Rules of Appellate Procedure, Appellant makes his preliminary statement. This is an appeal from a conviction for Sexual Assault, a second-degree felony offense.

On January 27, 2012, Appellant was indicted for the charge of Aggravated Sexual Assault and Assault Family Violence by Choking. In Count One (1) it was alleged that Appellant intentionally and knowingly cased the penetration of the female sexual organ of Chiquita Spears (hereinafter Spears) by the sexual organ of Appellant compelled Spears to submit and participate by the use of physical force and violence directed against Spears and she believed Appellant had the present ability to execute said threat and Appellant intentionally and knowingly placed Spears in fear of death and serious bodily injury would be imminently inflicted on Spears. In Count Two (2) it was alleged that Appellant intentionally, knowingly and recklessly caused bodily injury to Spears by impending the normal breathing or circulation of the blood of Spears by applying pressure to Spears' throat or neck or by blocking her nose or

9

mouth and Spears was a member of the family or household of Appellant.[30]

On May 12, 2014, Appellant's case was called for trial, in the 238th Judicial District Court of Midland County, Texas.[31] Appellant, by and through his trial counsel, Mark H. Dettman (hereinafter Dettman), appeared at trial and pled not guilty to the charges.[32] On May 14, 2014, the jury found Appellant not guilty of the offense of aggravated sexual assault as charged in Count One of the indictment but found Appellant guilty of the lesser-included offense of sexual assault as charged in Count One of the indictment.[33] The jury found appellant not guilty of the felony offense of assault family violence by choking as charged in Count Two of the indictment. The defendant elected for the jury to assess punishment.[34] On May 14, 2014, the punishment proceedings began. After being admonished, Appellant testified in the proceeding.[35] Appellant called no other witnesses. On May 15, 2014, the punishment phase of the trial

---

[30] C.R. Vol. 1, p. 7.

[31] R.R. Vol. 3, p. 6.

[32] R.R. 2, p. 132.

[33] R.R. Vol. 4, p. 107.

[34] C.R. Vol. 1, p. 37.

[35] R.R. Vol. 5, p. 134-135.

concluded. Having found Appellant guilty of the second-degree felony offence of sexual assault, the jury assessed Appellant's prison sentence at fifteen (15) years confinement in the Institutional Division of The Texas Department of Criminal Justice.[36]

---

[36] R.R. Vol. 5, p. 19.

/ end
copy

## SUMMARY OF ARGUMENT

Appellant raises two points of error on appeal. Appellant argues that (1) the evidence was insufficient to convict him of the offense of sexual assault and (2) the trial court abused its discretion when it excluded the victim's prior criminal convictions that were more than 10 years old. The evidence presented by the State simply insufficient to support the verdict and trial court erred when it excluded the victim's probative remote convictions.



# ARGUMENT AND AUTHORITIES

## I. POINT OF ERROR NUMBER ONE:

**The evidence by the State at Trial was insufficient to support a conviction for the offense of Sexual Assault.**

### 1. Standard of Review and Applicable Law

In determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt, the *Jackson v. Virginia*[37] legal sufficiency standard is now the only standard that a reviewing court applies.[38] The duty of the court of appeals is to determine if the explicit and implicit findings of the jury are rational by reviewing all of the evidence in the light most favorable to the verdict. Although the courts analysis considers all of the evidence presented at trial, the court of appeals does not re-weigh the evidence or substitute its judgment for that of the jury.[39] Particularly, the trier of fact serves as the sole judge of witness' credibility and weight to be afforded to any testimony and is free to accept or reject any evidence put forth by

---

[37] *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *I cQ*n

[38] *see Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010) (plurality op.); *Menchaca v. State*, 901 S.W.2d 640, 650 (Tex. App. - El Paso, 1995, pet. ref'd).

[39] *King v. State*, 29 S.W.3d 556 (Tex. Crim. App., 2000).

either side.[40]  While the jury is free to accept or reject any evidence put forth by either side,[41] an appellate court engaging in a legal sufficiency review must only determine whether the inferences drawn by the trier of fact are reasonable "based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict."[42]

In deciding whether or not evidence in a given case is factually and legally sufficient, the court must look at all of the evidence adduced at trial to determine if viewing all the evidence impartially, it must set aside the verdict because it is so contrary to the overwhelming weight of the evidence as to be clearly erroneous and unjust."[43]

## 2.    Argument

The State's case against the Appellant rested primarily on the testimony of Spears.  Spears' admitted actions did not rise to someone that who had inconsistents in her testimony

---

[40] *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); *see Brooks,* 323 S.W.3d at 899.

[41] *Id.*

[42] *Clayton v. State,* 235 S.W.3d 772, 778 (quoting *Hooper v. State,* 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007)).

[43] *Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App. 1996); *Stone v. State,* 823 S.W.2d 375 (Tex.App.—Austin 1992, pet. ref'd, untimely).

14

was sexual assaulted. After the alleged rape, Spears never testified to being in fear of him. She had her own vehicle and Appellant did not own one at the time.[44] There was no testimony that Appellant did not allow Spears to leave. She had her own car keys and her own set of keys to apartment.[45] Even though she had the ability to leave, Spears chose to stay and sleep in the same bed with Appellant after he allegedly raped her.[46] Spears agreed to take Appellant to work the next morning.[47] Spears returned to the apartment and destroyed Appellant's property; broke dishes and cut up the air mattress.[48] She took Appellant's only decent pair of jeans and took his DVD player.[49] Spears did not go to the hospital claiming she had been raped until 2:00PM.[50] Her actions match with a woman who is upset that her boyfriend is seeing another woman; not one that has been

---

[44] R.R. Vol. 3, p. 70.

[45] R.R. Vol. 3, p. 87.

[46] R.R. Vol. 3, p. 81.

[47] R.R. Vol. 3, p. 82

[48] R.R. Vol. 3, p. 83.

[49] *Id.*

[50] R.R. Vol. 3, p. 47-48.

15

sexually assaulted. Spears' testimony alone was clearly insufficient to support a conviction of Sexual Assault.

The State's other witnesses, Rodriguez, Sanders, Doyle, Lott and Rothwell were not present during the alleged threats and sexual assault. The important part of the testimony of Rodriguez and Sanders was that Appellant was cooperative. Doyle, Lott and Rothwell only confirmed that Spears and Appellant has sexual relations. Neither witness bolstered the evidence of that a sexual assault occurred. Doyle admitted the bruises can be caused in a variety of manner and that she did not age the bruises on Spears.[51] Doyle also testified that she could only tell what she is told.[52] Moreover, after performing a vaginal exam, Doyle noted no bruising or trauma.[53] There was no acute injury to labia majora.[54] There was no acute injury to labia minora.[55] There was no acute injury to vagina.[56] Lott

[51] R.R. Vol. 3, p. 146-147.

[52] RR. Vol. 3, p. 148.

[53] R.R. Vol. 3, p. 151.

[54] R.R. Vol. 3, p. 151.

[55] *Id.*

[56] *Id.*

16

COPY

testified that she could not tell how the semen got on the sample collected but only that it was identified.[57] Roth could not testify as to *if* a crime occurred; whether consensual or nonconsensual.[58].

While the jury is the sole trier of fact and any inconsistencies in the evidence are deemed to have been resolved by the jury in favor of their verdict, it is impossible that the jury could have returned a guilty verdict based on the evidence adduced at trial. The evidence presented by the State simply insufficient to support the verdict. The inferences drawn by this jury were unreasonable "based upon the combined and cumulative force of all the evidence" due to consensual sexual relationship between Spears and Appellant and the actions of Spears.

---

[57] R.R. Vol. 3, p. 27.

[58] R.R. Vol. 4, p. 40.

17

## II.   POINT OF ERROR NUMBER TWO:

**The trial court abused its discretion when it excluded the victim's prior criminal convictions that were more than 10 years old.**

### 1.   Standard of Review and Applicable Law

The abuse of discretion standard applies most often to the trial court's evidentiary rulings.   The test for abuse of discretion is "whether the trial court acted without reference to any guiding rules and principles' or "whether the act was arbitrary or unreasonable."[59] Reasonable minds can differ on issues such as the relevance of a particular piece of evidence, and "as long as the trial court's ruling was at least within the zone of reasonable disagreement," the appellate court should not substitute its reasonable perception for that of the trial judge.[60]   However, it explained, "when it is clear to the appellate court that what was perceived by the trial court as common experience is really no more than the operation of a common prejudice, not borne out in reason, the trial court has abused its discretion."

The admissibility of evidence of prior convictions is currently governed by Rule 609 of the Texas Rules of Evidence. The rule provides:

---

[59] *Downer v. Aquamarine Operations, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

372,391

[60] *Montgomery v. State*, 810 S.W. 272, 291(Tex. Crim. App. 1990).

378 291

*copy*

> **(a) General Rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

> **(b) Time Limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect.

Rule 609(b) renders a prior conviction presumptively inadmissible if it is one for which the witness has been released from custody more than ten years before trial.[61] A trial court may admit a conviction deemed to remote under this rule if the court determines that, under the "specific facts and circumstances" the probative value of the conviction substantially outweighs its prejudicial effect. This rule acknowledges that a witness "is

---

[61] *Jackson v. State*, 50 S.W.3d 579, 591 (Tex. App.-Fort Worth 2001, pet. ref'd)

19

*COPY*

capable of reforming his character over a period of law-abiding conduct."[62]

However, if evidence existed that the witness had failed to reform his character, for example, by committing a subsequent felony or crime involving moral turpitude, then the "taint of remoteness was destroyed and the witness could be impeached with evidence of the prior conviction."[63] If a defendant demonstrates a failure to reform as witnessed by later criminal behavior, remote convictions are more palatable."[64]

This common-law doctrine, known as "tacking," has been utilized by several courts of appeals when performing a Rule 609 analysis. Accordingly, under this analysis, if a witness' conviction is more than ten years old, a court would consider whether it had been "tacked" onto a subsequent conviction, which then alters the legal standard governing its admission.[65] Under this approach, if a subsequent conviction indicates "a

---

[62] *Leyba v. State*, 416 S.W.3d 563, 568 (Tex.App.-Houston [14 Dist.] 2013).

[63] *Id., citing McClendon v State*, 509 S.W.2d 851, 855-57(Tex. Crim. App. 1974) (op. on reh'g).

[64] *Hernandez v. State*, 976 S.W.2d 753, 755–56 (Tex. App.—Houston [1st Dist.]), *citing McClendon*, 509 S.W.2d at 855-57 *and Sinegal v. State*, 789 S.W.2d 383, 388 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd).

[65] *See Jackson v. State*, 50 S.W.3d 579, 591–92 (Tex. App.—Fort Worth 2001, pet. ref'd); *Rodriguez v. State*, 5 31 S.W.3d 359, 363 (Tex. App.—San Antonio 2000, pet. ref'd).

20

*COPY*

lack of reformation," then the conviction more than ten years old may be analyzed under Rule 609(a)'s "outweighs" standard rather than Rule 609(b)'s "substantially outweighs" standard.[66]

## 2. Argument

The trial court erred when it excluded the victim's remote convictions of prostitution. First, Spears admitted to being on felony probation for possession of a controlled substance at the time of trial.[67] On voir dire examination by Appellant's attorney, Spears admitted to being on deferred adjudication out of Wharton County for a felony theft.[68] In addition, in 2005 she was convicted of resisting arrest.[69] In 1999, Spears was convicted of prostitution in Houston, Texas.[70] Evidence exists that Spears failed to reform her character. While Rule 609(b) renders a prior conviction presumptively inadmissible if it is one for which the witness has been

---

[66] *See Jackson*, 50 S.W.3d at 591– 92; *Rodriguez*, 31 S.W.3d at 363; *Hernandez*, 976 S.W.2d at 755–56.

[67] R.R. Vol. 3, p. 17.

[68] R.R. Vol. 3, p. 59.

[69] *Id.*

[70] *Id.*

*COPY*

released from custody more than ten years before trial, Spears' continued failure to reform removes the taint of her prior conviction of prostitution. The Court failed to consider the tacking of the prostitution charge to her other crimes and thus failed to take into the account Rule 609(a)'s "outweighs" standard rather than Rule 609(b)'s "substantially outweighs" standard.[71]

---

[71] *See Jackson*, 50 S.W.3d at 591– 92; *Rodriguez*, 31 S.W.3d at 363; *Hernandez*, 976 S.W.2d at 755–56.

*C O P Y*

## PRAYER

WHEREFORE PREMISES CONSIDERED, Appellant John Edward Holmes respectfully requests that this Court <u>REVERSE</u> the trial court's judgment and <u>REMAND</u> the matter for a new trial in accordance with the presented issues. Appellant prays for all relief at law or in equity to which he is entitled.

Respectfully submitted,

**NAVARRETE & SCHWARTZ, P.C.**
*Attorneys at Law*
1007 W. Texas Ave.
Midland, Texas 79701
Tel: (432) 279-1479
Fax: (432) 279-1478

**CHRISTINE SCHWARTZ**
State Bar No. 24056733
***Attorney For Appellant***

23

## CERTIFICATE OF SERVICE

This is to certify that on November 13, 2014, a true and correct copy of the above and foregoing document was served on Appellee, The State of Texas, by and through Ms. Teresa Clingman, Midland County District Attorney, 500 N. Loraine, 2nd Floor, Midland, Texas, by United States mail, first class, in accordance with Rule 9.5 of the Texas Rules of Appellate Procedure.

_____
Christine Schwartz

24

## IN THE COURT OF APPEALS
## 11TH DISTRICT OF TEXAS
### *Eastland, Texas*

| | | |
|---|---|---|
| **JOHN EDWARD HOLMES,** | § | |
| | § | |
| *Appellant,* | § | |
| | § | |
| **v.** | § | **NO.  11-14-00143-CR** |
| | § | |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| | § | |
| *Appellee.* | § | |

## CERTIFICATE OF COMPLIANCE

I certify the Appellant's Brief was prepared with Microsoft Word 2011 and that according to that program's word-count function, the sections covered by TEX. R. APP. P. 9.4(i)(3) contains <u>3,582</u> words. I further certify the body text is 14 point font.

By:

_____
Christine Schwartz
*Attorney for Appellant*